J. W. PRICE, Appellant, v. J. F. HOLCOMB et al., Appellees.

1. **Corporations**: MEETING OF STOCKHOLDERS: RIGHT TO VOTE SHARES. Where one half of the stock in a corporation was issued to B. upon his agreement to pay twenty thousand dollars, to be used in making needed changes in the plant of the company and as working capital, and thereafter certain improvements in the company's works were authorized by the corporation, which were paid for by B., and for which he was allowed by the company nearly seventeen thousand dollars, held, that B. being entitled, as fully paid, to such number of shares as the sum thus expended by him would purchase under the terms of said agreement, he had the right to vote such number in a meeting of the shareholders of the corporation, and such shares, with others admitted to be entitled to vote, being a majority of all the stock voted at a shareholder's meeting, a resolution for which B. voted all of the stock held by him, including that not paid for, was legally adopted.

2. ————: SALE OF CORPORATE PROPERTY: RIGHTS OF MAJORITY. Where the business of a corporation had been operated at a loss from the beginning, and its works had been idle for about a year, because, though solvent, it was without the necessary working capital, and was unable to secure it, and no practicable plan for putting them in operation had been suggested, though frequently discussed, and the officers of the corporation were not in accord, and it was apparent that no agreement could be reached by which the company's works could be operated or leased, held, that the circumstances justified a sale of the property and business of the corporation by the action of a majority of the shareholders against the protest of a minority.

3. ————: ————: STOCKHOLDER AS PURCHASER. A stockholder in a corporation has a right to purchase the corporate property at public sale.

4. ————: ————. Section 1060 of the Code, providing that, "no corporation can be dissolved prior to the period fixed in the articles of incorporation, except by unanimous consent," will not prevent a sale of all the property of the corporation by a majority only of the capi-

tal stock, when circumstances demand it, even though such sale
result in the dissolution of the corporation.

5. ——: ——: STOCKHOLDER AS PURCHASER. The relation of a
stockholder in a corporation to the other shareholders, and to the cor-
porate property, is not such as to preclude his becoming a purchaser
of the entire corporate property at a public sale thereof.

*Appeal from Des Moines District Court.*—HON. JAMES
D. SMYTHE, Judge.

MONDAY, OCTOBER 9, 1893.

THE plaintiff, owner of one seventh of the stock of
the Iowa Rolling Mill Company, a corporation under
the laws of Iowa, organized for the purpose of rolling
and making iron at its works in Burlington, Iowa,
prosecutes this action in equity to set aside a sale and
conveyance of the works of said corporation to the
defendant J. F. Holcomb in pursuance of certain reso-
lutions adopted by the stockholders. A decree was
entered dismissing the plaintiff's petition, from which
decree he appeals.—*Affirmed.*

*C. L. Poor* and *Thomas Hedge*, for appellant.

*Power & Huston*, for appellees.

GIVEN, J.—Prior to 1887 the plaintiff and others,
residents of Burlington, Iowa, organized a corporation
known as the Burlington Rolling Mill Company, with
a paid up capital of thirty-six thousand dollars, for the
purpose of erecting and operating a rolling mill at
Burlington for the manufacture of iron. The works
were constructed and operated for a time at a loss. These
parties being inexperienced in the business, and the
company without sufficient capital, the defendant
Richard Brown, of Youngstown, Ohio, a gentleman of
experience in the iron business, and possessed of means,
was solicited to take an interest in the business, and to
associate with him other men of experience to operate

the works. In pursuance of an agreement, the defendant, the Iowa Rolling Mill Company, was incorporated with a capital stock of seventy thousand dollars, and the property of the old company was transferred to it free of debt and incumbrance. Certificates for one half of the capital stock were issued to the stockholders in the old company in lieu of their stock therein, and for the other half to Mr. Brown and his associates, M. C. Williams and E. H. Wilson, of Youngstown, upon Brown's promise to pay twenty thousand dollars, to be used in making needed changes in the works and as working capital. The defendant company, being thus organized, leased the works to Brown and his associates for one year free of rent, and at the end of that year extended the lease for a second. Brown and his associates operated the mill on their own account, but in the name of the corporation and through his treasurer, until in May, 1889, when the buildings were destroyed by fire. The mill was operated at a loss to Brown and his associates. During the second year of the lease the defendant J. F. Holcomb, of Youngstown, purchased nearly all of the stock held by Wilson, and thereafter took part in the management of the business. Certain improvements were authorized to be made on the works during the lease, all of which were made and paid for by Brown and his associates at a cost, as they claim, of seventeen thousand dollars. A committee of the company reported in favor of allowing sixteen thousand, seven hundred and forty-six dollars and ninety-six cents of this claim. The works were rebuilt after the expiration of this lease, but were not operated, because of a failure to agree upon any plan for operating them. While all parties seem to have desired that the works should be operated, no tangible plan was suggested. There was a proposition from one Roberts to pay a royalty on the iron made for the use of the works, but this offer was

indefinite, and gave but little assurance of work being resumed under it. The fact is apparent that such differences had sprung up between the Burlington and Youngstown stockholders that it was not likely that any plan would be agreed upon for leasing or operating the works. The record of the proceedings of the stockholders, as set out in the abstract, is as follows:

"October 7, 1890. Annual stockholders' meeting (there being present and voting six hundred and eighty seven shares of stock). J. F. Holcomb offered the following resolution, which was seconded and adopted, viz.:

" 'Whereas, the corporation has been organized and in existence for about three years, having its mills ready for operation; and,

" 'Whereas, the entire capital stock of this company, seventy thousand ($70,000) is invested in the grounds and plant, leaving the company without any working capital; and,

" 'Whereas, the mills were operated for the first two years by Richard Brown and others under a contract, during which time no money was made by such operation, either for Mr. Brown and others or for the company; and,

" 'Whereas, the mills have stood idle ever since October, 1889, this company being utterly unable to set them in motion for want of capital, and during which time the directors have not been able to make any contract or arrangements for the operation of the mills, and in the meantime the property and plant has been largely decreasing in value, and will continue so to do if allowed to remain idle, and, as a result, the stockholders are not only losing the use of their capital invested, but are losing the capital itself; and,

" 'Whereas, the officers and directors do not report any plan or prospect for any arrangement for the operation of the mills during the coming fiscal year,

and the company can not operate them for want of means;'

" 'Therefore, resolved, that the board of directors of this company be, and they are hereby, directed and instructed to proceed at once and sell the entire property and plant of this company, either at public or private sale, and on such terms as they deem for the best interests of the stockholders, and that they make the sale within the next sixty days; and they are hereby authorized to make, execute, and deliver any and all necessary and proper deeds, contracts, and other instruments in order to effectually carry out and consummate such sale, and, further, that they report their doings in this matter to an adjourned stockholders' meeting.

" 'Resolved, further, that when this meeting is adjourned, it adjourn to meet on the eighth day of November, 1890, at three o'clock P. M., to transact such business as may then seem proper, and, further, that the directors make report at that meeting of the prospects of sale or other disposition of the property, and that no actual sale be made previous to that date, unless pursuant to some other action of the stockholders.' "

"October 7, 1890.  Board of directors' meeting. 'Whereas, the stockholders of this company, at their annual meeting, October 7, 1890, by a resolution there offered and adopted, directed and instructed the directors of this company to proceed at once and sell the entire property and plant of this company, either at private or public sale; and,

" 'Whereas, the sale, by the resolution, must be consummated within sixty days from October 7, 1890; and,

" 'Whereas, on account of approaching winter, it is desirable to make such sale as early as possible, to enable the purchaser or purchasers to make necessary improvements and repairs;

" 'Therefore, resolved, that the president and secretary of this board be, and they are hereby, directed and instructed to proceed at once, and solicit offers and enter into negotiations for the sale of the entire property and plant of this company, by advertising the same at their discretion in at least two of the leading iron trade papers of this country, and otherwise, as they may deem advisable, and that they make a full report in relation thereto to this board at some appropriate time, prior to the adjourned annual stockholders' meeting, to be held November 8, 1890.'

"To which J. W. Price offered the following substitute, which was also seconded, viz.:

" 'Resolved, that the board of directors proceed at once to make the necessary arrangements for putting the Iowa Rolling Mills into operation, under the management of its own officers, at the earliest practicable time.'

"Substitute lost, and the original motion carried."

The minutes of an adjourned meeting of the stockholders of the Iowa Rolling Mill Company held on November 8, 1890:

" J. F. Holcomb offered a resolution that the board of directors are hereby instructed to proceed at once and sell at public sale the mill, premises, and entire property and plant of this corporation; terms of sale, half cash, and the balance in six and twelve months from date of sale, with six per cent. interest per annum with good security. Mr. Guelich offered an amendment providing that no bids should be entertained at said sale for less than seventy-five cents on the dollar of the stock. Mr. Huston moved to amend the amendment by striking out 'seventy-five cents on the dollar,' and inserting 'twenty-five thousand dollars.' Mr. Huston's amendment was carried; Price, Guelich and Gear voting 'No,' and the resolution, as amended, was carried by the following vote: Ayes: Richard Brown, by Hol-

comb, one hundred and seventy shares; E. M. Wilson, by Holcomb, ten shares; J. F. Holcomb, one hundred and seventy seven and one half shares; J. G. Foote, fourteen shares; C. J. Ives, by Foote, seventeen shares; E. S. Huston, five shares; total, three hundred and ninety-three and one half shares. Noes: J. W. Price, one hundred and one third shares; Price & Wiese, by Price, eight shares; Theodore Guelich, sixty nine and one third shares; J. H. Gear, seventy-eight and one third shares; Mrs. H. F. Gear, by Guelich, twenty-eight shares; Horace Rand, by Guelich, five shares, total, two hundred and eighty-two shares. Mr. Price objected to any stock being voted that had not been fully paid for, and ruled that no such stock be voted, but his ruling was not sustained. 'The undersigned stockholders protest against the resolution offered by J. F. Holcomb, and adopted, to sell the property of this company at public sale on December 13, 1890, the limit to the price being entirely too low, in our estimation. [Signed] Theo. Guelich, H. F. Gear, by Guelich. H. S. Rand, by Guelich. John H. Gear. J. W. Price.' Adjourned to meet December 12, 1890. J. F. Holcomb, Secretary.

"Dec. 12, 1890. Adjourned stockholders' meeting. After some general discussion as to the condition of the property and the prospects of selling, Mr. Holcomb offered the following resolution: 'There being no offers for the property and plant of this company at private sale, and no offers to lease the same which are acceptable to the majority interest, therefore, be it resolved, that the board of directors be, and they are hereby, instructed and directed to proceed and sell the same at public sale on the thirteenth instant, as advertised, and to this end the president and secretary are hereby instructed and directed to attend the sale, procure the services of a suitable person as auctioneer, and are charged with the duty and responsibility of seeing that

the orders of this company in the matter are carried out. Resolved, further, that when this meeting adjourns it adjourn to meet on Saturday, December 20, 1890, at three o'clock P. M., to receive the report of the sale, and to transact any other business which may then come before the meeting.' Which resolution was adopted by a vote of three hundred and seventy-six and one-half shares for and two hundred and eighty-two against.''

"Dec. 20, 1890. Adjourned stockholders' meeting. J. F. Holcomb then offered the following resolution: 'There having been no bids for the property and plant of this company at the public sale of the same, advertised to take place at the courthouse door this day at two o'clock P. M., and said sale having been adjourned to take place on Saturday, the twenty-seventh instant, at the same hour and place, said action is hereby approved, and the president and secretary are hereby authorized and directed to attend and conduct said sale, advertising the same in the local papers. It is further ordered that, when this meeting adjourns, it be to meet on Saturday, the twenty-seventh instant, at three o'clock P. M., at which time the president and secretary are hereby ordered to make report of said sale.' Which resolution was adopted by a vote of three hundred and seventy-six and one half for, and one hundred and seventy-two and two thirds against.''

At the meeting, to wit, December 27, 1890, the stockholders, by a vote of three hundred and seventy-six and one half shares for, and one hundred and seventy-two and two thirds shares against, adopted the following:

"Mr. Huston also submitted the following order: 'The property and plant of this company having been this day sold at public sale to John F. Holcomb for twenty thousand dollars, pursuant to orders and directions of this company, and there being no prospect of making a more favorable sale, and, owing to appar-

ently irreconcilable differences between the stockholders, there being no prospect of putting the mills in operation under any plan which would offer any substantial return to the stockholders, it is, therefore, ordered that said sale be, and the same is hereby, approved and confirmed, and the president and secretary are hereby authorized and directed to execute the proper deed and other papers, and complete said sale, according to the terms authorized: Provided, however, that, such sale having been made to a stockholder of this company, it shall not be completed for eight (8) days from this date, and if, during that time, any *bona fide* bid of not less than five hundred dollars in excess of the above bid be received by the president and secretary, then said property shall again be offered at public sale at an adjourned meeting of this stockholders' meeting, to be held at the office of Guelich & Blanke on Monday, January 5, 1891, at three o'clock P. M., and the property then sold to the highest bidder, according to the terms heretofore advertised, and said sale at once perfected and completed; but, if no bid of an increase of five hundred dollars is so received, then the sale to John F. Holcomb for twenty thousand dollars shall at once be completed and perfected, and the necessary papers executed and delivered.' 'On behalf of himself as the holder of sixty-nine and one third shares of the stock, J. H. Gear, Mrs. H. F. Gear, and H. F. Rand, holding seventy and one third, twenty-eight, and five shares of stock, respectively, for whom he has a proxy, the undersigned hereby protests against the pretended sale of the property and plant of the company, and against the consummation thereof, for the reasons, first, that the stockholders, under our articles of incorporation, have no authority to act in the premises; second, that the stock not paid for has no right to vote in a stockholder's meeting. Burlington, Iowa, Dec. 27, 1890. Theo. Guelich."

"Jan. 5, 1891. Adjourned stockholders' meeting. Mr. Huston offered the following order: "There being no further or better offer for the property and plant of this company over and above twenty thousand dollars, as bid by John F. Holcomb at the public sale held December 27, 1890, it is now ordered, that the sale to him at that price be, and the same is hereby, approved and confirmed, and the president and secretary are hereby directed to execute the proper deed thereof, and deliver the same to said John F. Holcomb, on his making payment therefor according to the terms of sale, to wit, one half cash, and the balance in six and twelve months from date of sale, at six per cent. interest with good security.' Which order was adopted by a vote of three hundred and seventy-six and one half shares for, and one hundred and seventy-two and two thirds against."

And at the same meeting the following order was offered:

"It appearing that a proper deed for the property and plant of this company to John F. Holcomb, in accordance with the sale made to him, as appears on the records of this company, has been submitted to J. W. Price, president of this company, for his signature, and he having refused to execute it, it is now ordered that the secretary be, and he is hereby, instructed and directed to take such steps as may be necessary, including employing counsel and instituting legal proceedings in the name and on behalf of the company, to compel the execution of such deed by the president, as ordered by this company," which order was adopted by the same vote.

It was upon the authority of these resolutions that the sale in question was made and confirmed to the defendant Holcomb. The plaintiff being president of the company, and refusing to execute a deed to Holcomb, proceedings were had whereby Mr. Brown, as

vice-president, was authorized to, and did, execute a
deed to Holcomb, which was approved by the board of
directors, March 31, 1891. This action having been
commenced January 2, 1891, the board of directors, at
its meeting March 30, 1891, ordered as follows:

"It is further ordered that upon said purchaser
filing with the treasurer the written consent of not less
than three fourths (¾) in amount of the stock of this
company, that the deed to him shall be delivered, with-
out requiring payment in cash or notes, as provided by
the terms of sale, and an obligation signed by himself
and Richard Brown, of Youngstown, Ohio, that they
will, when requested by this board, pay over to the
treasurer the *pro rata* share of the proceeds arising from
said sale, which shall then be coming to such stock-
holders as have not given their written consent as
aforesaid, said deed shall be at once delivered to the
purchaser, John F. Holcomb."

The written consent of stockholders and the obli-
gation of Holcomb and Brown were executed as required
by this order, and through inadvertence were retained
by Holcomb, as secretary, instead of being filed with
the treasurer. Upon the execution of these instruments
the deed in question was delivered, and Holcomb took
possession of the works.

I. The articles of incorporation of the defendant
company provide, that the capital stock shall all be paid
up, "and that every stockholder shall be
entitled to one vote for every share of
stock so held." It will be observed that
the stock issued to Brown and his asso-
ciates was voted in favor of their resolutions authoriz-
ing and confirming the sale and conveyance to Holcomb,
and was necessary to constitute a majority. The
appellant contends that Brown had not paid the twenty
thousand dollars in cash, as agreed, and, therefore, said
stock was not paid for and not entitled to be voted.

1. CORPORATIONS:
meeting of
stockholders:
right of vote:
shares.

That stock was issued with the consent of all the stockholders, by the plaintiff as president, upon Brown's promise to pay the twenty thousand dollars for the purpose expressed. If this was all that appeared, it might well be questioned whether Brown's obligation to pay the twenty thousand dollars was not a payment for the stock, within the meaning of the articles. We have seen, however, that Brown had paid at least sixteen thousand, seven hundred and forty-six dollars and ninety-six cents of the twenty thousand dollars for improvements authorized, as he had agreed to do. It is certainly clear that Brown was entitled to credit on the twenty thousand dollars for the amount thus paid, and to that extent the stock was paid for.

It is argued that nothing less than a full payment of the twenty thousand dollars was a payment for any part of this stock. The stock was in shares of one hundred dollars each, and, while this might be true as to a fraction of a share, it is certainly not as to the three hundred and fifty shares. Mr. Brown was entitled to a share as fully paid up as soon as he had paid the agreed price thereof. The amount paid entitled him to at least two hundred and ninety-three shares. The highest number of shares voted against either of the resolutions was two hundred and eighty-two, while all the Brown stock and forty-three and one half shares of other stock, admitted to have been paid for, were voted for the resolutions. Counting the Brown stock at two hundred and ninety-three, there was a clear majority of paid up shares in favor of each of said resolutions. During the time the works were operated under the lease, it was in the name of the corporation, with the knowledge and consent of all the stockholders. All money was received and paid through the treasurer, and the president made some of the operating contracts. Brown paid more than the price of his stock into the treasury for operating expenses, and thus became

entitled to an accounting with the company as to the twenty thousand dollars and the money so paid. The stock issued to Brown and his associates was continuously voted at all meetings with the knowledge of all the stockholders, without objection, until the protest mentioned above. We can not say, with the light of all these facts, that the resolutions authorizing and confirming the sale were not adopted by a legal majority of the stock voted.

II. It is unquestionably true that a private corporation holds its property as a trust fund for the stockholders, and that, when a majority of the stockholders act together, they are in a sense the corporation, and must act with due regard to the right of the minority. If the majority decide arbitrarily, and without just cause, to sell the property of the corporation to the prejudice of the minority, and thereby compel the winding up of the business of the corporation, it is a fraud upon the minority, and courts of equity will interfere. If, however, just cause exists for selling the property, as when the corporation is insolvent, and the sale is necessary to pay debts, or where, from any cause, the business is a failure and an unprofitable one, and the best interests of all require it, the majority have clearly power to order the sale, and in such case their acts are not *ultra vires*. Cook on Stockholders & Corporation Law, sections 656, 662, 667. In this last section it is said: "If, however, the corporation is an unprofitable and failing enterprise, then a sale of all the corporate property with a view to dissolution may be made by the majority of stockholders." It would be a harsh rule that would permit one stockholder to hold the others to their investment when just cause existed for closing the business of the corporation. *Lauman v. Lebanon Valley R'y Co.*, 30 Pa. St. 42. In *Sawyer v. Dubuque Printing Co.*, 77 Iowa, 242, this

2. ——: sale of corporate property: rights of majority.

court recognized the right of the majority of stock-holders to make sale of all the corporate property when just cause existed for so doing, and held, under the facts of that case, that the sale was warranted, and was not a fraud upon the minority.   The appellant cites at at length from *Ervin v. Oregon R'y & Navigation Co.*, 27 Fed. Rep. 625.   In that case there was no claim of necessity for the disposition of the corporate property that was made.   It is said: "Plainly the defendants have assumed to exercise a power belonging to the majority in order to secure personal profit for them-selves, without regard to the interests of the minority. They repudiate the suggestion of fraud, and plant themselves upon their right as a majority to control the corporate interest according to their discretion." It was plainly held that a court of equity would not tol-erate a discretion that did not consult the interest of a minority.   The right of a majority to wind up the affairs of a corporation like this, and dispose of its assets, even against the objections of a minority, when the business could no longer be advantageously carried on, is recognized.   See *Hayden v. Official Hotel Red-Book and Directory Co.*, 42 Fed. Rep. 875, a case similar in many of its facts to this, and in which the rule just announced was recognized.

We must look to the facts, and see if the action of the majority in ordering the sale in question was warranted by the circumstances.   The enterprise was a new one in Iowa.   The works had been operated at a loss from the beginning.   They had been idle for about one year.   The corporation, though solvent, was with-out the necessary working capital, and unable to secure it.   No tangible plan for operating the works was suggested, though the subject was frequently dis-cussed.   True, after the adoption of the first resolution to sell, it was proposed to lease to Mr. Roberts, but, as already stated, his offer was indefinite, if it may be

called an offer, and afforded no reasonable ground for expecting that the works could thereby be put in operation. We are inclined to think that this plan was presented by the minority for the purpose of preventing the sale ordered, rather than from any hope of starting the works under it. A marked disagreement had sprung up between the plaintiff and the defendant, Holcomb, neither being willing for the corporation to assume business with the other in even partial control. The Burlington stockholders mainly took sides with the plaintiff, and the Youngstown stockholders with Holcomb. It was apparent that no agreement could be reached by which the works could be operated or leased. No alternative was apparent but to leave the works to rust and decay in idleness, or to sell them. We think the circumstances fully justified the action of the majority in authorizing a sale of the works.

The appellant cites section 1066 of the Code, which provides as follows: "No corporation can be dissolved prior to the period fixed in the articles of incorporation, except by unanimous consent, unless a different rule has been adopted in their articles." It is contended that, as the articles fixed twenty years, a sale of all the property, that necessarily terminated the business, could not be made, except by unanimous consent. The sale of all the property may have the effect of terminating the business for which the corporation was organized, but it does not dissolve it. Such a sale no more dissolves the corporation than would the giving of a mortgage that might ultimately result in all the property being taken from the corporation. *Buell v. Buckingham*, 16 Iowa, 284, 296. This corporation still exists, and is properly made a party to this action as an existing corporation. It is certainly not the purpose of section 1066 to perpetuate the existence of corporations when circumstances arise demanding their dissolution. Hence, if the sale of the property was necessary, the

right to make it would not be defeated, even if it had the effect of dissolving the corporation. Section 1066 applies when no circumstances arise that defeat the purpose for which the corporation was organized, and that require an earlier dissolution.

III. The appellant cites cases announcing the familiar rule that a party holding a fiduciary relation to trust property can not become a purchaser thereof, either directly or indirectly. It is contended that the defendant Holcomb, in voting the majority of the stock, as already stated, stood in the place of the corporation, and was charged with its trust relation toward the stockholders, and, therefore, within the rule forbidding him from purchasing the property. Mr. Holcomb's relation as a stockholder was not that of agent or trustee, but a joint owner. An agent or trustee is charged with the interests of his principal or *cestui que trust*, and can not have any interest adverse thereto. Not so, however, as to a stockholder. He has his own interests to protect, and is not charged with the care of the interests of the other stockholders. They act for themselves. The rule applicable to stockholders is well stated in *Rice's Appeal*, 79 Pa. St. 204, as follows: "Where a person has the actual control of a corporation, whether such control arises from the ownership of a majority of the shares, or from his position or influence, he is held to most rigid good faith. The onus is upon him to show the fairness of the transaction if it is called in question." This brings us to inquire whether the appellee Holcomb acted in good faith. It is unnecessary that we extend this opinion by here discussing the evidence on this point. It is sufficient to say that purchasers for such property were not numerous, the sale was advertised and open, it was postponed in hope of securing bidders, the minimum price was fixed, and at an open sale the appellee Holcomb made his bid. It is true that the price bid

3. ——: ——: stockholder as purchaser.

was much less than the cost of the property, but it was all it would bring at an open sale, and, in view of the past failures of this new enterprise, may be said to be equal to the then value of the property. We find no evidence of fraud or bad faith in the transaction. What was done was authorized by the circumstances, and was done in good faith, and for the best interests of all concerned.

The judgment of the district court is AFFIRMED.