### VOIGT v. REMICK.

1. CORPORATIONS—CONTRACTUAL RELATION WITH STOCKHOLDER.
    Relation between corporation and its stockholders is contractual
    in its nature.

2. SAME—COMMON-LAW POWER TO SELL PROPERTY.
    At common law, neither directors of corporation nor majority
    of its stockholders had right, power, or authority to sell and
    convey all property of going and prosperous corporation
    capable of achieving objects of its creation, as against objec-
    tions of single stockholder.

3. SAME—CHARTER IS CONSTITUTION.
    Charter of corporation is its constitution, prescribing duties of
    stockholders and directors in exercise of power therein con-
    ferred upon them.

4. SAME—ACTS OF MAJORITY OF STOCKHOLDERS ACTING WITHIN
    CHARTER BINDING.
    Majority of stockholders is sovereign when they act within limits
    of their charter, but when they transcend scope of their cor-
    porate powers and authority their acts are not binding.

5. SAME—RIGHT OF DIRECTORS TO SELL OUT BUSINESS.
    General doctrine that board of directors of corporation may not
    sell out its business and property and defeat object of its or-
    ganization without consent of stockholders has no application
    in case where, in charter creating it, such power has been
    conferred on directors.

6. SAME—CREATIONS OF STATUTE.
    Corporations are creations of statute, having right to exercise
    powers and privileges conferred on them by law, and stock-
    holders therein have only those rights fixed and defined by
    statute.

7. SAME—STOCKHOLDERS AGREE THAT INVESTMENT BE HANDLED BY
    COMPANY SUBJECT TO LAW.
    Those who become stockholders in private corporation become
    such upon agreement and contract that their investment there-
    in may be handled subject to exercise of any and all powers
    conferred upon corporation by law.

8. SAME—DIRECTORS OCCUPY FIDUCIARY RELATION.
    Corporate directors occupy fiduciary relation to stockholders,
    and are forbidden to act where duty is opposed to interest,
    fidelity to cupidity, integrity to personal gain.

As to contracts between corporations having common directors or
officers, see annotation in 33 L. R. A. 788.

9. SAME—MAJORITY MAY NOT MANIPULATE STOCK TO DISADVANTAGE OF MINORITY.

> Majority of stockholders of corporation, by consolidation agreement or otherwise, may not manipulate its assets so as to destroy equality of right among stockholders, or in any manner which is unequal, unfair, or inequitable, oppressive, discriminatory, or illegal, deprive minority stockholders from having same rights as others.

10. SAME—VALIDITY OF CHARTER PROVISION FOR INTERLOCKING DIRECTORATES—FRAUD.

> That charter provided against voiding transactions entered into between corporations with interlocking directorates does not render it void, but it is duty of court to scrutinize deal accomplished between corporations represented in whole or in part by same directors with care, and, if fraud is found, to properly protect interests of those injuriously affected.

11. SAME — CONSOLIDATION AGREEMENT — INTERLOCKING DIRECTORATES.

> Consolidation agreement is neither void nor voidable at election of any stockholder merely because directors making or controlling agreement are common directors of both consolidating companies.

12. SAME—EQUITABLE RELIEF AGAINST MERGER PROPERLY DENIED IN ABSENCE OF FRAUD.

> Stockholder attacking merger of corporation with another was properly denied equitable relief, in absence of evidence of fraud, although merger may have been error in judgment on part of board of directors.

Appeal from Wayne; Searl (Kelly S.), J., presiding. Submitted June 9, 1932. (Docket No. 59, Calendar No. 36,220.) Decided October 3, 1932. Rehearing denied December 6, 1932. Motion for reconsideration granted January 3, 1933. Denied January 25, 1933.

Bill by Augusta L. Voigt against Jerome H. Remick and others, directors of the Detroit Creamery Company, to enjoin transfer of certain corporate property. Bill dismissed. Plaintiff appeals. Affirmed.

*Frank C. Sibley (L. Frank McKnight, of counsel),* for plaintiff.

*Stevenson, Butzel, Eaman & Long,* for defendants.

POTTER, J.  Plaintiff, claiming to be the owner of 10,000 shares of the capital stock of the Detroit Creamery Company of the value of $450,000, brought suit to enjoin defendants from holding a meeting February 6, 1930, or at any other time, from transacting any business or taking any forward steps in the affairs of the corporation on February 6, 1930, or at any time thereafter, for an order directing the Detroit Creamery Realty Company, in case the court should permit such meeting, to issue to plaintiff, prior to such meeting, 10,000 shares of capital stock of the Detroit Creamery Realty Company, and permit her to vote and participate in the business of such meeting.  She asked that the articles of incorporation of the Detroit Creamery Realty Company be declared null and void and canceled; the Detroit Creamery Company and National Dairy Products Corporation come to an account as to the disposition of $577,554.86 and $2,000,000 set aside at the annual meeting of February 7, 1929, not paid in dividends, that defendants be restrained from selling, assigning, or in any manner altering the assets and affairs of said corporation until her status therein and in the Detroit Creamery Company and National Dairy Products Corporation was determined; that the court set aside and cancel article 9 of the articles of incorporation of the Detroit Creamery Realty Company relative to mortgaging the corporate property without consent of the stockholders; that all contracts existing or to be made wherein any director was personally interested be invalidated and held for naught; that defendants be restrained from con-

tracting and taking any personal benefits, not allowed stockholders, in making contracts for said corporation, with other corporations, and all parts of article 9 be held void where the same violates the fiduciary relation and duty of directors to stockholders; that the National Dairy Products Corporation be prohibited from voting as a stockholder its 755,487 shares of capital stock and upwards in either the Detroit Creamery Company or the Detroit Creamery Realty Company, and for other relief.

Plaintiff files this bill as a minority stockholder, complaining of the acts of the majority. She alleges the Detroit Creamery Company, December 23, 1929, reduced its capital stock from 1,200,000 shares of the par value of $10 a share, to 768,401 shares without par value; that the amended articles of association provide the total amount of stock with the nominal or par value subscribed and paid in is 768,401 shares, having an aggregate value of $4,419,559.86; that of the total value of such shares, $3,842,005 was capital and $577,554.86 was surplus available which surplus earnings might be properly applied according to the statements contained in the amended articles of association; that on or about February 7, 1929, the stockholders of the Detroit Creamery Company held a meeting and by resolution voted to segregate the real estate holdings of the Detroit Creamery Company and thereafter another corporation, known as the Detroit Creamery Realty Company was organized under the laws of the State of Michigan, all of which plaintiff opposed; that in accordance with such resolution of the Detroit Creamery Company, certain stockholders named as defendants combined, confederated, and maliciously united in the voting power of their several shares of stock, and against her consent, and in accordance with their resolution

July 10, 1929, organized the Detroit Creamery Realty Company to purchase, lease, or in any manner acquire, and own land and real estate improved and unimproved of every kind and description, and to sell, dispose of, lease, convey, and mortgage such property or any part thereof; to manage, control, operate, develop, improve, subdivide, build upon such real estate property and to engage generally in the real estate business, and to do any and all such other acts and things as were necessary, incidental, convenient, or ancillary to any of the enumerated purposes calculated directly or indirectly to promote the interests of the corporation; that the articles of association of the Detroit Creamery Realty Company provided for a total capital stock of 800,000 shares of no par value; that the articles show the amount subscribed is 768,401 shares, and the amount paid in is $3,161,050; that the subscription for the capital stock of said Detroit Creamery Realty Company was made by the Detroit Creamery Company by its sale and transfer to the Detroit Creamery Realty Company of the real estate formerly owned by it.

Article 9 of the articles of association of the Detroit Creamery Realty Company provides:

"General authority is hereby conferred upon the board of directors to at any time, or times, mortgage all or any part of the property of the corporation, without first obtaining the consent of the stockholders or any part thereof.

"No contract, or other transaction between the corporation or any other corporation or firm shall be affected or invalidated by the fact that any one or more of the directors of this corporation is or are interested in, or is a member, director or officer, or are members, directors, or officers of such other corporation or firm, and any director or directors individual-

ly or jointly may be a party or parties to or may be interested in any contract or transaction of this corporation, or in which this corporation is interested; and no contract, act or transaction of this corporation with any person or persons, corporations or firms shall be affected or invalidated by the fact that any director or directors of this corporation is a party or are parties to or interested in such contract, act or transaction or in any way connected with such person or persons, corporations, firms or association and each and every person who may become a director of this corporation is hereby relieved from any liability that might otherwise exist from contracting with the corporation for and on account of himself or any corporation, firm or association in which he may be in any wise interested.''

Plaintiff alleges this provision of the articles of association of the Detroit Creamery Realty Company is an overt attempt on the part of the officers thereof to exploit plaintiff and other stockholders of the Detroit Creamery Company and to cheat, wrong, defraud and mislead them, and to force them to relinquish their rights and obey their demands for an unlawful purpose. She also alleges defendants entered into a contract with the National Dairy Products Corporation whereby the National Dairy Products Corporation agreed to acquire all the shares of stock of the Detroit Creamery Company in exchange for shares of the common stock of the National Dairy Products Corporation upon the basis of one share of National Dairy Products Corporation for each two and one-half shares of the Detroit Creamery Company; that by such agreement the Union Trust Company was made a depositary to effect the exchange of stock of the Detroit Creamery Company and the National Dairy Products Corporation. The bill alleges the provisions of this agree-

ment providing for the exchange of the stock of the Detroit Creamery Company for the stock of the National Dairy Products Corporation, which stock was to be transferred after the segregation of the real estate of the Detroit Creamery Company and its sale and transfer to the Detroit Creamery Realty Company. Plaintiff alleges that by reason of the manipulation of the stock and assets of the Detroit Creamery Company, the value of her holdings therein have been impaired; that all of the action taken by the defendants was taken against her objection and without her acquiescence therein. She complains that defendants have not furnished her with information in relation to the transactions in which she was interested and charges that the acts and conduct of defendants were in fraud of her rights.

The defendants answer admitting the transfer of the real estate of the Detroit Creamery Company to the Detroit Creamery Realty Company, which had been organized substantially as indicated by plaintiff's bill of complaint; they deny any fraud or misconduct, allege they are willing plaintiff should have the same rights in the stock and assets of the Detroit Creamery Company and the property for which the same was exchanged as they themselves have. There was, at the time the National Dairy Products Corporation agreed to take over the stock of the Detroit Creamery Company, an agreement whereby certain active officers of the Detroit Creamery Company were to continue in the employ of the National Dairy Products Corporation at an increased salary. Considerable testimony was taken, at the conclusion of which the trial judge filed an opinion and a decree was entered dismissing the plaintiff's bill of complaint. From this decree plaintiff appeals.

The relation between a corporation and its stockholders is contractual in its nature. *Livingston* v.

*Lynch,* 4 Johns. Ch. (N. Y.) 573. At common law, neither the directors of a corporation nor a majority of its stockholders had the right, power, or authority to sell and convey all the property of a going and prosperous corporation capable of achieving the objects of its creation as against the objections of a single stockholder. *Forrester* v. *Boston, etc., Mining Co.,* 21 Mont. 544 (55 Pac. 229, 353) ; *Bulkley* v. *Big Muddy Iron Co.,* 7 Mo. App. 589; *Price* v. *Holcomb,* 89 Iowa, 123 (56 N. W. 407) ; *City of St. Louis* v. *St. Louis Gaslight Co.,* 70 Mo. 69; *Byrne* v. *Schuyler Elec. Manfg. Co.,* 65 Conn. 336 (31 Atl. 833, 28 L. R. A. 304) ; *Tillis* v. *Brown,* 154 Ala. 403 (45 South. 589) ; *Kean* v. *Johnson,* 1 Stockt. Ch. A. (9 N. J. Eq.) 401; *Smith* v. *Stone,* 21 Wyo. 62 (128 Pac. 612) ; *Taylor* v. *Earle,* 8 Hun (N. Y.), 1; *Abbot* v. *American Hard Rubber Co.,* 33 Barb. (N. Y.) 578.

The charter of a corporation is its constitution. It prescribes the duties of stockholders and directors within the limits of the charter in the exercise of the power conferred upon them. A majority of the stockholders is sovereign when they act within the limits of their charter, but when they transcend the scope of their corporate powers and authority, their acts are not binding. *Langolf* v. *Seiberlitch,* 2 Pars. Eq. Cas. (Pa.) 65. A sale of the corporate property of a private corporation, though authorized by a majority of the stockholders, which in effect operated to discontinue the corporate enterprise and thwart the purposes of the creation of the corporation, against the objections of a single stockholder, at common law, impaired the contractual obligation lying at the foundation of corporate organization and was *ultra vires.*

"The general doctrine that a board of directors of a corporation cannot sell out its business and

property and defeat the object of its organization without the consent of the stockholders, may be conceded, but it has no application in a case where in the charter creating it such power has been conferred on the directors.'' *City of St. Louis* v. *St. Louis Gaslight Co., supra.*

Corporations are creations of statute, having the right to exercise the powers and privileges conferred upon them by law. Stockholders therein have only those rights fixed and defined by statute. Those who become stockholders in a private corporation become such upon the agreement and contract that their investment therein may be handled subject to the exercise of any and all powers conferred upon the corporation by law. What powers may the directors of a private corporation, organized under the laws of the State of Michigan, exercise?

2 Comp. Laws 1929, § 9961, provides:

"Subject to the laws of this State and of the United States with respect to monopolies and illegal restraints of trade, any corporation may, at any meeting of its board of directors, sell, lease or exchange all of its property and assets, including its good will and its corporate franchises, upon such terms and conditions and for such consideration, which may be in whole or in part shares of stock in, and/or other securities, of, any other corporation or corporations, as its board of directors shall deem expedient and for the best interests of the corporation, when and as authorized by the affirmative vote of the holders of two-thirds of the stock issued and outstanding having voting power given at a stockholders' meeting duly called for that purpose, or when authorized by the written consent of the holders of two-thirds of the voting stock issued and outstanding: *Provided, however,* That the articles of association may require the vote or written consent

of the holders of a larger proportion of the stock issued and outstanding. Notice of such sale shall be filed with the secretary of State within thirty days thereafter, and such corporation shall thereupon be deemed to have surrendered its corporate rights, and shall transact no further business excepting such as may be necessary to wind up its corporate affairs."

2 Comp. Laws 1929, § 9962, provides:

"Subject to the limitations of the laws of this State and of the United States with respect to monopolies and illegal restraints of trade, any two or more corporations organized under this or any general law of this State, or which may be created under the laws of any State or country, may, by a vote of two-thirds of the legally issued voting capital stock of each of said corporations, at any meeting of stockholders duly called to consider the question of such consolidations, notice of which meeting shall be sent by registered mail, postage prepaid, to each stockholder at least thirty days previous to said meeting, agree to unite and consolidate the said corporations. At such meeting the terms upon which the consolidation shall be effected, the valuation of the several properties, and the number of shares of stock in the consolidated corporation to which the stockholders in each of the constituent corporations may be entitled, shall be determined and spread at length upon the records of each of the constituent corporations."

2 Comp. Laws 1929, § 10172, provides:

"*The People of the State of Michigan enact,* That any corporation formed under any general law of this State may at any general or special meeting of its stockholders, with the consent of three-fourths of its capital stock, sell and convey all its property and franchises, rights and privileges or any portion of its real property or franchises to any other cor-

poration formed under the same or any similar law for corporate purposes of the same character. No such meeting of stockholders of any corporation shall be legal or valid, or the proceedings thereof of any force or effect unless the directors or other officers or parties calling the same shall cause a notice of the time, place and object of holding the same to be published in accordance with the provisions of the law or laws of this State under which such corporation is organized: *Provided,* That nothing herein contained shall be construed as authorizing any railroad corporation to consolidate its stock, property, or franchises with any other railroad corporation owning a parallel or competing line.''

2 Comp. Laws 1929, § 10173, provides:

''Any number of persons desiring to purchase the property, franchises, rights and privileges, of any existing corporation may organize a corporation under the law under which said corporation is formed, or any similar law, and in accordance with its requirements and provisions, and the corporation so organized or any corporation already organized under such law shall have power to purchase the property, franchise, rights and privileges of any such existing corporation: *Provided,* That nothing herein contained shall release in whole or in part said selling corporation from any and all of its liabilities previously contracted: *Provided further,* That the provisions of this act shall not apply to corporations organized or existing under an act, entitled 'An act to revise the laws providing for the incorporation of companies for mining, smelting and manufacturing iron, copper, silver, mineral coal and other ores, minerals, and to fix the duties and liabilities of such corporations,' approved May eleventh, eighteen hundred and seventy-seven.''

The corporation involved here had the right, power and authority conferred upon it by the statutes

above quoted to do what it did do. To divide its property; to sell a part of it to another foreign corporation engaged in the same business and to take therefrom payment therefor in the corporate stock of the purchasing corporation. Members of the defendant corporation had the right, power, and authority to organize the Detroit Creamery Realty Company and to purchase and acquire on behalf of the stockholders of the Detroit Creamery Realty Company the real estate which was conveyed to it by the Detroit Creamery Company. The Detroit Creamery Company, when its directors were authorized by the statutory number of stockholders therein, had the right, power, and authority to transfer a part of its real estate to the Detroit Creamery Realty Company.

Of course, in the exercise of all these powers upon the part of the Detroit Creamery Company, the officers and directors thereof and of the Detroit Creamery Realty Company were and are subject to the general principle that the corporate stock of none of such companies may be manipulated to the detriment of minority stockholders. A part of the stockholders of the corporations involved have no right to manipulate the stock and property under their management and control in violation of the trust reposed in them as stockholders, so that they acquire either an undue advantage or such stock and property on terms other and different from that accorded to minority stockholders who may not have agreed with their plan of management and control. The general rule governing the rights of minority stockholders is stated in 14A C. J. pp. 1061, 1062.

The rights of stockholders in cases where corporations are consolidated was considered in *Turner* v. *Calumet & Hecla Mining Co.*, 187 Mich. 238, where it

was held on the authority of *Clute* v. *Barron,* 2 Mich. 192, in accordance with the general rule, that corporate directors occupy a fiduciary relation to stockholders, are forbidden to act where duty is opposed to interest, fidelity to cupidity, integrity to personal gain. A majority of the stockholders of a corporation, by consolidation agreement or otherwise, may not manipulate its assets so as to destroy the equality of right among stockholders, or in any manner which is unequal, unfair, inequitable, oppressive, discriminatory, or illegal, deprive minority stockholders from having the same rights as others. Such inequality may be the basis of equitable interposition, but interlocking directorates are not forbidden, and the fact that article 9 of the charter of the Detroit Creamery Realty Company provided against voiding transactions entered into between corporations with interlocking directorates does not render such article 9 void, though it is the duty of the court to scrutinize a deal accomplished between corporations represented in whole or in part by the same directors with care, and, if fraud is found, to properly protect the interests of those injuriously affected. *Beidenkopf* v. *Des Moines Life Ins. Co.,* 160 Iowa, 629 (142 N. W. 434, 46 L. R. A. [N. S.] 290). The consolidation agreement is not either absolutely void or voidable at the election of any stockholder merely for the reason that the directors making or controlling the agreement were the common directors of both the consolidating companies. *Colgate* v. *U. S. Leather Co.,* 73 N. J. Eq. 72 (67 Atl. 657).

Article 9 above quoted is not void at the instance of a single stockholder. The trial court found:

"There is no evidence in this case of any contracts between the two corporations, and no evidence that the so-called merger was brought about for fraud-

ulent purposes, but it appears to be a plain, everyday business deal, which at the time it was made was by the board of directors and the officers of the Detroit Creamery Company believed to be in the interests of the stockholders of that company. These men might have erred in judgment, and it is possible that the Detroit Creamery Company and all its stockholders would have been better off had this so-called merger never taken place, but that is not a matter for the court. This is a chancery case, in which the plaintiff asks for equitable relief, and, unless I can find some fraud on which to base such relief, I cannot require an accounting on the part of the defendants. I am unable to find such fraud, and therefore plaintiff must fail."

We think the trial court arrived at a correct conclusion. Its decree is affirmed, with costs.

CLARK, C. J., and SHARPE, NORTH, and FEAD, JJ., concurred with POTTER, J. McDONALD, WIEST, and BUTZEL, JJ., concurred in the result.