WILLIAM E. PLATNER v. GEO. F. KIRBY, LE GRAND QUARRY COMPANY, and MT. VERNON STONE COMPANY, Appellants.

138  259
142  33
f142  145

**Corporations:** DISSOLUTION: RIGHTS OF STOCKHOLDER: STATUTES.
1  Code, section 1640, does not authorize a stockholder to bring an action in equity to dissolve the corporation and wind up its affairs; this right is reserved by the statute to an action by the attorney-general in the name of the State on account of the violation of law, and it leaves to the stockholder such remedy as he previously had.

**Same.** While courts of equity will control the action of officers of corporations so as to prevent the interests of minority stockholders from being prejudiced unlawfully, yet the minority is not entitled to a decree of dissolution simply because of dissensions among the stockholders, or failure of the officers to successfully conduct the business; unless the corporation has become practically insolvent, and then the minority may have a receiver appointed.

**Appeal:** ARGUMENT: RIGHT TO REPLY. Where the appellee has the burden and is therefore entitled to open and close the argument, but gives notice that he waives the opening and thus casts upon the appellant the burden of opening the argument, he thereby becomes entitled to make proper reply, if filed in time to avoid interference with the submission of the case.

*Appeal from Linn District Court.*— HON. J. H. PRESTON, Judge.

SATURDAY, APRIL 11, 1908.

ACTION in equity by plaintiff as stockholder in the Mt. Vernon Stone Company to have the company dissolved, its business closed up, and a receiver appointed for that purpose. There was a decree for plaintiff, from which defendants appeal.— *Reversed.*

*Chas. A. Clarke & Son,* for appellants.

*Chas. W. Kepler & Son,* for appellee.

McCLAIN, J.— In 1894 the plaintiff, who was the owner of thirty-eight acres of land adjoining the town of Mt. Vernon on which was situated a stone quarry with machinery, and which he had been developing and operating for about a year, entered into an arrangement with the defendant Kirby for the formation of the defendant corporation, the Mt. Vernon Stone Company; it being mutually agreed that plaintiff should turn his property over to the corporation, and receive in exchange therefor one hundred and fifty

shares of the full paid capital stock of the company of the par value of $15,000, and that said Kirby should pay into the treasury of the corporation, $15,000 in cash, receiving a like number of shares of full-paid capital stock. This contract was subject to the making of satisfactory arrangements with a railroad company for track and shipping facilities. Later the contract was modified, so that only $10,000 should be paid by Kirby, in the event that certain railroad connections were perfected, and a crushing plant established in the neighborhood, and stock of a corresponding par value should be issued to plaintiff for his land. This arrangement was carried out in the organization of the Mt. Vernon Stone Company, save that the money which Kirby agreed to furnish was furnished by the defendant, the Le Grand Quarry Company, of which Kirby was president and the principal stockholder, and the shares of stock in the Mt. Vernon Stone Company were issued to the Le Grand Quarry Company, instead of to Kirby. As plaintiff had knowledge of the issuance of the stock to the Le Grand Quarry Company instead of to Kirby, and the payment of $10,000 by that company, he cannot now object that that company, instead of Kirby, became the owner of one-half the stock in the Mt. Vernon Stone Company. Plaintiff duly executed a conveyance and bill of sale of his land and the machinery thereon to the Mt. Vernon Stone Company, and the Le Grand Quarry Company paid $10,000 in cash, and to it was issued one hundred shares of stock in the company thus organized.

In the articles of incorporation, it was provided that plaintiff, Kirby, and one Gregg, who was also an officer and stockholder in the Le Grand Quarry Company, should be directors until their successors were elected; Kirby being president and the plaintiff secretary and treasurer. At subsequent annual elections, as the record shows, the officers and members of the board of directors were re-elected from time to time. The business of the corporation was carried on without substantial disagreement between plaintiff and

the officers of the Le Grand Quarry Company until 1902, when plaintiff, as a result of dissatisfaction with the results of the business, turned over his books to the officers of the Le Grand Company, and went south on other business, taking no further part in the management of the company until 1904, when this action was instituted to dissolve the corporation and appoint a receiver to wind up its affairs on the substantial allegations that the company has been a financial failure; that the value of its assets has decreased; that it has lost money and is in debt; that there is internal dissension between the stockholders to such an extent that the quarry cannot be operated; and that the Le Grand Quarry Company, being a competing corporation, has operated the company for the purpose of restraining trade and competition with it.

It is conceded that the business of the Mt. Vernon Stone Company has not been successful, and that no dividends have been paid; but it is not alleged nor proven that it is insol-

1. CORPORATIONS: dissolution: rights of stockholders: statutes.

vent, and the substantial question for our determination is whether these facts authorize a court of equity at the suit of plaintiff, a stockholder, to dissolve and wind up the affairs of the company.  We have omitted reference to many of the facts appearing in the record in regard to the complaints of plaintiff as to the management of the company by the officers of the Le Grand Quarry Company, for the reason that plaintiff's counsel admit in argument that no ground for dissolution is established, unless by Code, section 1640, authority is given to a court of equity to dissolve the corporation which would not otherwise have been possessed by such court.  This provision which first appears in the statute law of this State as a section in the Code of 1897, is as follows: " Sec. 1640. Dissolution: receiver.  Courts of equity shall have full power, on good cause shown, to dissolve or close up the business of any corporation, and to appoint a receiver therefor, who shall be a resident of the State of

Iowa.    An action therefor may be instituted by the Attorney General in the name of the State, reserving, however, to the stockholders and creditors all rights now possessed by them."    It is to be noticed that the first sentence of this section authorizes courts of equity to dissolve a corporation " on good cause shown," and the second sentence authorizes an action therefor to be instituted by the Attorney General in the name of the State.    Counsel for appellee admit that there is no interest of the public at stake requiring or authorizing the institution of such action by the Attorney General, and the question is whether dissensions among the stockholders and lack of success in the business of the corporation and the management of its affairs by its officers so as to discriminate against its business in favor of the business of a rival corporation owning half the stock, is such " good cause shown " as to justify interposition by a court of equity to wind up its affairs.

Section 29 of chapter 1 in title 9 of the Code as reported by the Code Commission (being the chapter relating to corporations for pecuniary profit) was in the following language:    " When a corporation violates the provisions in this chapter in its management or the transaction of its business or becomes insolvent any stockholder may bring an action in equity to dissolve the same and wind up its affairs and a like action may be brought by the Attorney General in the name of the State.    If the court decrees a dissolution it may at the same time appoint a receiver who shall under its direction proceed to close up the business of such corporation."    And with reference to the section thus reported the commission says:    " It is thought that the protection of the interests of the stockholders, as well as of the public, ought to be provided for when the corporation acts unlawfully or becomes insolvent."    When the reported Code was brought before the Legislature for consideration, the joint committee of the two houses in charge of the portion thereof which included the chapter above referred to reported a substitute

in this language: "Courts of equity shall have full power on good cause shown to dissolve or close up the business of any corporation and to appoint a receiver therefor who shall be a resident of the State of Iowa. An action therefor may be instituted by a stockholder or by the Attorney General in the name of the State." By amendment, however, the second sentence of the section was changed so that, as adopted, the section authorizes the institution of a suit by the Attorney General in the name of the State, reserving to the stockholders and creditors all rights now possessed by them. We think it clear that the "good cause shown," referred to in the first sentence, is such cause as prior to the adoption of the Code would have been a ground for dissolution of the corporation by a court of equity, for in the second sentence existing rights of stockholders and creditors are recognized and preserved. The substantial effect of the section, therefore, is to authorize the Attorney General to maintain a suit in equity in the name of the State to wind up the corporation on account of some violation by it of the laws of the State, or other such action as involves a violation of this chapter. Prior to the adoption of this section, the Attorney General was authorized as to various classes of corporations to institute an action in equity for the appointment of a receiver and the winding up of the corporation. See Code, sections 1731, 1777, 1795, 1877. But without such specific provision, the only method of dissolving a corporation in the interest of the State or the public seems to have been by an action in the nature of *quo warranto* under Code, sections 4313, 4328, in which there is no provision for the appointment of a receiver, or other exercise of equitable powers by the court. The section as reported by the Code Commission evidently contemplated a dissolution at the suit of a stockholder only for violation of the statutory provisions as to the management of its business, or in case of insolvency, and, as the Legislature struck from the section all reference to institution of such action

by a stockholder and simply reserved to stockholders their rights already existing, we think the section as finally adopted must be construed as having reference only to the institution of an equitable action by the Attorney General. The legislative intent seems to have been to authorize what was not previously authorized with reference to corporations in general, an action in equity by the Attorney General in the name of the State and in the interests of the public to dissolve a corporation on account of violation by it of the laws of the State, and to leave to the stockholder such remedy as he already had.

In construing similar language in an Illinois statute, the court of that State held that under it a court of equity did not have power to decree a dissolution of a corporation and appoint a receiver merely because the interests of the stockholders or some of them in equity and good conscience seem to demand it, and that the purpose of the provision was only to enable the court in cases in which its jurisdiction was properly invoked under the statute to afford complete relief, and that the " good cause " must necessarily be a legal cause, a cause for which the sovereign authority might by law resume the franchises granted; and further that it would not be presumed the Legislature intended by the use of the language employed to authorize a forfeiture of corporate franchises for causes for which the State might not procure judgment of forfeiture at law. *Wheeler v. Pullman Iron & Steel Co.,* 143 Ill. 197 (32 N. E. 420, 17 L. R. A. 818). The case of *Hitch v. Hawley,* 132 N. Y. 212 (30 N. E. 401), is not in point in the construction of our statute, for in that State the court is expressly authorized to decree a dissolution when it will be beneficial to the interests of the stockholders, and not injurious to the public interests. Moreover, in that case it appeared that the dissolution was sought by a majority of the stockholders, and in this State we have recognized the right of a majority to determine whether the corporation shall be continued, or shall be wound up. *Price*

v. *Holcomb,* 89 Iowa, 123. See 2 Cook on Corporations
(4th Ed.) section 629. The plaintiff was not the owner of
the majority of the stock. His interest in the corporation
was equal, but not superior, to that of the Le Grand Quarry
Company, which is the only other stockholder, and in the
board of directors selected in accordance with the provisions
of the articles of incorporation he is in the minority. It
may be unfortunate for the plaintiff that he consented to
transfer his property to a corporation in which he did not
have a majority of the stock, so that he could control the se-
lection of the board of directors, but perhaps there would not
have been any corporation, and the Le Grand Quarry Com-
pany would not have invested $10,000 which has been used
in the development and management of the property had he
insisted on having the power of control in his own hands.
However this may be, he voluntarily entered into the organ-
ization of the corporation and transferred his property to
it, and is entitled to no relief in equity, unless he brings
himself within some established rule relating to the control
of corporations by courts of equity.

It is well-settled law that, while a court of equity
may control the action of the officers of a corporation so as
to prevent the interests of a minority of the stockholders

2. SAME.

from being prejudiced by unlawful action,
the minority has not the right to a decree of
dissolution on the ground of differences of opinion as to the
management or failure of the officers to conduct the busi-
ness successfully and to the satisfaction of the minority.
*French v. Gifford,* 30 Iowa, 148; *Wallace v. Pierce-Wallace
Publishing Co.,* 101 Iowa, 313; *Stewart v. Pierce,* 116 Iowa,
733; *Croft v. Lumpkin-Clestatee Mining Co.,* 61 Ga. 465;
*Folger v. Columbian Ins. Co.,* 99 Mass. 267 (96 Am. Dec.
747); *Wheeler v. Pullman Iron & Steel Co.,* 143 Ill. 197,
(32 N. E. 420, 17 L. R. A. 818). The fact that the business
is a losing one under the majority management is not a rea-
son why the minority may have the corporation dissolved in

equity, in the absence of some statutory authority. *Pratt v. Jewett,* 9 Gray (Mass.) 34. Where the corporation has become practically insolvent, so that there is danger of the seizure of its business by the creditors, a receiver may be appointed. *Dickerson v. Cass County Bank,* 95 Iowa, 392. And see *Supreme Sitting, etc., v. Baker,* 134 Ind. 293 (33 N. E. 1128, 20 L. R. A. 210, and note). But in this case there is no claim of insolvency nor of danger that the property will be seized by creditors, and we think that no equitable power to decree a dissolution and the appointment of a receiver is shown.

A motion to strike appellant's reply argument has been submitted with the case, but we find no occasion to deny ourselves the advantage of any light afforded by such reply.

3. APPEAL: argument: right to reply.

Appellee, having the burden, and being therefore entitled to open and close the argument under the provisions of rule 44 relating to trial *de novo,* notified appellant in due time as provided by that section that he waived the opening. Thereupon appellant filed his argument. Appellee argued in response and appellant replied in such time that appellee, if he had seen fit, might have called attention in print to any errors or new matter in appellant's reply and had such printed matter served without delaying the submission of the case. It is not claimed that there is anything in the reply which would not be proper in a closing argument, but only that appellant does not have the right to close. It is true that the rule does not expressly provide for a reply in such cases; nor could it very well do so. The appellant might delay filing his argument to so late a date that his insistance on the right to reply if given would result in postponing the submission. On the other hand, the rule does not prohibit reply, and we do not see any occasion for so interpreting our rules that the appellee, having the burden in the case, may throw upon appellant the burden of the opening without the privilege of the close. The argument of appellee was not a mere reply,

but a full argument such as he might properly have filed as an opening argument. Under such circumstances, we decline to strike a proper reply filed by appellant in such time as not to interfere with the submission of the case on the date fixed therefor. The motion is overruled. The decree is *reversed.*