First National Bank of Waterloo, Appellee, v. Fireproof Storage Building Company et al., Appellants.

**CORPORATIONS:** Dissolution—Insufficient Grounds. Equity will not,
1  at the instance of a minority stockholder, pass a sentence of death on a solvent and going corporation,—in other words, dissolve it,—(1) because officers were not regularly elected, nor corporate meetings regularly held, or (2) because the administrative officers had unlawfully diverted corporate assets to their own use and profit.

**CORPORATIONS:    Corporate Funds—Restitution Enforced.** Equity
2    will, at the instance of a minority stockholder, compel the manag-
ing officers of a corporation to restore to the corporate treasury cor-
porate funds unlawfully converted to their own use and profit. So
held where a president had drawn compensation, in addition to his
salary, for effecting sales of corporate property; also, where he
had drawn compensation for easements in his own property when
he had otherwise received compensation for such easements.

**CORPORATIONS:   Officers—Fiduciary Relations.** Principle reaffirmed
3    that the managing officers of a corporation occupy a fiduciary rela-
tion toward the stockholders in the transaction of the corporate
business.

**CORPORATIONS:    Powers—Employment of Broker.** Expenditures
4    made by a corporation to a broker for effecting a sale of corporate
assets are proper.

**Headnote 1:** 14a C. J. pp. 1114 (Anno.), 1120 (Anno.), 1122. **Head-
note 2:** 14a C. J. p. 155. **Headnote 3:** 14a C. J. pp. 97, 99. **Headnote
4:** 14a C. J. p. 571.

*Appeal from Black Hawk District Court.*—E. B. Stiles, Judge.

February 10, 1925.

Rehearing Denied May 12, 1925.

Action in equity by a minority stockholder for an account-
ing by the director and president of the corporation in con-
trol of its business, and for the appointment of a receiver for,
and the dissolution of, the corporation. The lower court granted
the relief prayed, and the corporation and its president appeal.
—*Modified and affirmed.*

*Edwards, Longley, Ransier & Harris,* for appellants.

*Pickett, Swisher & Farwell,* for appellee.

Vermilion, J.—The appellant the Fireproof Storage
Building Company, a corporation, was organized in 1907 by E.
E. Manhard and the appellant F. J. Fowler.   200 shares of com-

1. CORPORATIONS: dissolution: insufficient grounds. mon stock of the par value of $100 per share were issued, of which the incorporators each originally owned 100 shares. The articles of incorporation provided that the affairs of the corporation should be managed by a president, a vice president, a secretary, and a treasurer, and a board of not less than two nor more than five directors. The general nature of the business to be transacted by the corporation, as fixed by the articles of incorporation, was "the buying, selling and leasing real estate and erecting buildings thereon." Until the death of Manhard, on December 13, 1913, F. J. Fowler was president and treasurer, and Manhard vice president and secretary, and the two constituted the board of directors. The corporation acquired a tract of ground in the city of Waterloo. Upon one part of this it erected a storage building, and upon another, a garage. These buildings were rented for a time. Prior to Manhard's death, he had collaterated his stock, or a part of it. The appellee bank ultimately became the owner of 65 shares, and the Fowler Company, a corporation engaged in the grocery business, of which F. J. Fowler is president, acquired the remaining 35 shares of the stock formerly owned by Manhard. From the date of Manhard's death, in 1913, until 1916, the appellant F. J. Fowler was the only individual stockholder, the remaining stock belonging either to Manhard's estate, the bank, or the Fowler Company. During that time, no meetings of stockholders or directors were held, and no directors or officers were elected.

In January of 1916, the appellant Fowler, the Fowler Company, and the appellee bank joined in the execution of an instrument which appears in the record book of the corporation, and which recited the death of Manhard and the holding of all the common stock of the corporation by the signers, waived notice of a stockholders' meeting, and declared that Frank J. Fowler, Jr., was elected a director. One share of stock held by the Fowler Company was assigned to him. The record also shows his election as vice president and secretary. Following his election as a director and officer, Frank J. Fowler was in the military service for two and a half years. The corporation's records show meetings of the directors in September,

1919, and October, 1921, but no stockholders' meeting until in April, 1922.

In 1919, the corporation sold and conveyed to Brandes and Widdel the ground on which the garage stood, with certain easements on other property, and reserving certain easements in the property conveyed. The purchasers paid $10,000. In 1921, the corporation sold the ground upon which the storage house stood, to the Artificial Ice & Fuel Company, with certain described easements over other property, and reserving certain easements to the grantor and F. J. Fowler. The purchaser paid $42,500, of which $15,000 was paid in cash, and $27,500 in the bonds of the purchaser, drawing 7 per cent interest. The appellant corporation had outstanding $27,500 of preferred stock, providing for 6 per cent cumulative dividends, which was then subject to retirement at the call of the holders at par and accumulated dividends. The bonds received from the sale of the storage building were taken by the holders of the preferred stock, and their stock surrendered. The appellant company paid a broker $500 for his services in the sale of the warehouse, and the appellant Fowler received $1,000 from the corporation as compensation for his services in effecting the sale and in making the exchange of bonds for stock with the holders of preferred stock. He also received $1,000 of the amount paid by the Artificial Ice & Fuel Company, and $500 of the sum paid by Brandes and Widdel. Of the funds of the corporation, $11,000 were loaned to the appellant Fowler upon his unsecured notes, drawing 7 per cent interest. These notes have been renewed, the accrued interest being included in the new notes. $10,000 were loaned to the Fowler Company upon its unsecured note, at 7 per cent interest. The interest upon this note has been paid when due. The notes given for these loans are due on demand, or ten days thereafter.

F. J. Fowler, as president of the appellant corporation, was paid a salary of $75 or $100 per year during the years from 1916 to 1920. Dividends on the common stock have been paid during the years 1914, 1917, 1919, and 1921, ranging from 4 to 7 per cent. Dividends were not paid in other prior years because of paving taxes and other extraordinary expenses, and none were paid in 1921. The corporation now owns one piece

of real estate, upon which stands a dwelling house occupied by a tenant, and worth about $4,500. During all the time covered by these transactions, the appellant F. J. Fowler was in sole charge, management, and control of the property and business of the corporation. While, during a part of the time, Frank Fowler, Jr., was a director and officer, he seems to have taken no active part in the management of the business.

The foregoing facts are not in dispute, and upon them the appellee prayed, and procured in the court below, a decree dissolving the corporation; ordering its assets distributed among its stockholders; appointing a receiver to wind up its affairs; and requiring the appellant F. J. Fowler to turn over to the receiver the notes of himself and the Fowler Company, and to pay to the receiver the $500 paid to the broker for services in selling the storage house, the $1,000 and the $500 paid to himself out of the proceeds of the property sold, and $1,000 paid to himself for negotiating the sale of the storage house and effecting the exchange of the bonds received therefor for the preferred stock.

The relief was claimed in the pleadings, and the decree is defended in argument, upon two grounds: (1) That the corporation has ceased to function, and has abandoned entirely the purposes which are outlined in its articles of incorporation and for which it was organized; (2) that the appellant F. J. Fowler has been guilty of such mismanagement of the affairs of the corporation, in paying to himself the various amounts stated and in lending the funds of the corporation to himself and another corporation controlled by him, as amount to a fraud upon the minority stockholders, against which equity will afford the relief granted.

To sustain the first of the above contentions, appellee relies upon Section 1628 of the Code of 1897, which provided that a corporation should cease to exist by nonuser of its franchise for two years at any one time, but that the omission to elect officers or hold meetings at any time prescribed by its articles or by-laws should not work a forfeiture, if such election was held within two years of the time appointed therefor. This section was repealed by Chapter 374 of the Acts of the Thirty-eighth General Assembly.

It is clear there has been no failure of the corporation to function, and no nonuser of its franchise, so far as relates to the transaction of business. It cannot be said that its business was at an end when the storage house was sold. It still owns real estate from which it derives an income in the way of rental, and still has a portion of the proceeds of the sale of its other property, and the right to reinvest, when and if its directors see fit. The sale of all its property would not dissolve the corporation. *Price v. Holcomb*, 89 Iowa 123; *Beidenkopf v. Des Moines Life Ins. Co.*, 160 Iowa 629.

It is contended that Section 1628 was self-executing, and that, by the mere failure of the corporation to elect officers or hold meetings, its corporate franchise was forfeited, and that it ceased to exist, except for the purpose of winding up its affairs. It will suffice to say that, while the act remained on the statute books, it was never so construed. *Commercial Nat. Bank v. Gilinsky*, 142 Iowa 178; *Cownie v. Dodd*, 167 Iowa 627. We are by no means convinced that we are now, after its repeal, required to so hold, to work a dissolution of a solvent corporation that is, and has at all times been, in the active exercise of its proper and authorized franchise by owning and leasing real estate. By its articles of incorporation, its officers and directors held office until their successors were elected.

Section 1640 of the Code of 1897 (Section 8402, Code of 1924) provides:

"Courts of equity shall have full power, on good cause shown, to dissolve or close up the business of any corporation, and to appoint a receiver therefor, who shall be a resident of the state of Iowa. An action therefor may be instituted by the attorney-general in the name of the state, reserving, however, to the stockholders and creditors all rights now possessed by them."

This statute, while giving to courts of equity power, on good cause shown, to dissolve corporations and to appoint receivers therefor, and authorizing the attorney-general to institute proceedings for such purpose, did not confer upon stockholders any new or enlarged rights in that respect. Such rights only as they then possessed were reserved to them.

We inquire what were the rights possessed by a minority

stockholder to compel the appointment of a receiver for, and the dissolution of, a going and solvent corporation? In *French v. Gifford*, 30 Iowa 148, a leading case, it was said, after an exhaustive review of the authorities:

''These cases sufficiently indicate the general view which the courts have taken of this interesting question.' A little attention to them will discover that, although apparently in conflict, they are easily susceptible of reconciliation. Those of them in which the jurisdiction of equity is denied, are cases in which that jurisdiction was invoked for the purpose of depriving the corporation of its franchises, winding up its affairs, and distributing its assets; those in which it is recognized, are cases in which proceedings were instituted on behalf of stockholders, against the officers of the corporation, for fraudulent misapplication of funds, or breach of trust in the discharge of official duties. They are not only consistent with themselves, but in harmony with the general doctrines of equity jurisprudence, which forbid the interposition of courts of equity in cases where the law affords ample relief, but always concede it for the enforcement of trusts and the prevention of frauds. The doctrine best sustained by authority, and most in consonance with reason and justice, seems to be that courts of equity, aside from statutory provisions, do not exercise a jurisdiction over a corporation, as over a partnership, to dissolve it and distribute its assets; but that it will afford a stockholder relief from the malfeasance of those intrusted with the management of the corporate business.''

In *Dickerson v. Cass County Bank*, 95 Iowa 392, the doctrine of *French v. Gifford*, supra, was approved; and where it appeared that the business of the corporation, a bank, was being conducted at a loss, and the assets had been allowed to become of such a character and so scattered that they could not be readily realized upon without great sacrifice, this was said to be malfeasance on the part of the officers, against which a court of equity would afford a stockholder relief. The case arose upon a motion to set aside the appointment of a receiver appointed on the petition of a stockholder, and it was held that the motion was properly overruled.

In *Wallace v. Pierce-Wallace Pub. Co.*, 101 Iowa 313, it

was held that the mere inability of the only two stockholders to agree, where no legal wrong had been committed by either, would not authorize the appointment of a receiver for the corporation or the dissolution of the corporation by a court of equity. The *Dickerson* case was distinguished.

In *Platner v. Kirby*, 138 Iowa 259, Section 1640 was considered, and it was said:

"While a court of equity may control the action of the officers of a corporation so as to prevent the interests of a minority of the stockholders from being prejudiced by unlawful action, the minority has not the right to a decree of dissolution on the ground of differences of opinion as to the management or failure of the officers to conduct the business successfully and to the satisfaction of the minority."

It was further said:

"The fact that the business is a losing one under the majority management is not a reason why the minority may have the corporation dissolved in equity, in the absence of some statutory authority."

There was, in that case, no claim of insolvency nor of danger that the property would be seized by creditors, and it was held that there was no equitable power to decree a dissolution and the appointment of a receiver.

In *Troutman v. Council Bluffs S. F. & C. Co.*, 142 Iowa 140, we said:

"So long as the corporation is acting within the scope of its authority as a corporation and is solvent, plaintiff, as a minority stockholder, cannot control its actions by proceedings to have it dissolved because he is dissatisfied with the method in which it is being conducted."

In *Stockholders of Jefferson County Agric. Assn. v. Jefferson County Agric. Assn.*, 155 Iowa 634, it was said:

"It seems to be well settled in this state that a court of equity will not entertain a suit by stockholders to wind up the affairs of a corporation and distribute its assets, in the absence of allegations of mismanagement and fraud on the part of the officers, or insolvency, unless authorized to do so by statute. * * * Mere differences among stockholders as to the advisability of the continuance of the corporate existence will not justify

the appointment of a receiver. * * * It is a general rule that a court of equity will not interfere, on the suit of stockholders, with a method of managing the affairs of a corporation, nor decree its dissolution save on recognized grounds for equitable relief, or in pursuance of statutory provisions.''

It is settled doctrine that every stockholder impliedly agrees, on becoming a member of the corporation, that the management and control of the corporate business and interests shall be vested in the majority. *Beidenkopf v. Des Moines Life Ins. Co.*, supra; *Rossing v. State Bank*, 181 Iowa 1013; *Platner v. Kirby*, supra. The foregoing statements of the rights of a minority stockholder are in accord with the weight of authority. 14a Corpus Juris 948 *et seq.* See, also, note to *Exchange Bank of Wewoka v. Bailey*, 29 Okla. 246 (116 Pac. 812), found in 39 L. R. A. (N. S.) 1032. The rule is thus stated in 14a Corpus Juris 949:

''Even though a court of chancery, by virtue of its general equity jurisdiction, may enjoin conduct on the part of corporate directors in violation of the trust or of the law, at the suit of a stockholder, in a suit by such party the general rule already stated has been applied in many cases, that, in the absence of a statute conferring such authority, the court cannot take any step the sole purpose or the primary object of which is to wind up the affairs of the corporation, or in ordinary cases to take the control and management thereof from those to whom the stockholders and the law have intrusted them. And so the courts refuse to interfere by the appointment of a receiver on the ground merely that there has been mismanagement or fraudulent conduct on the part of the officers or directors of the corporation, unless, perhaps, in cases where insolvency has resulted therefrom, because the principles of remedial or preventive justice go no further than to enjoin or forbid the misconduct of, or to remove, the unfaithful officer.''

We do not have to do here with any right of the state through its proper officer to dissolve the corporation or forfeit its franchise for any misuse of its corporate powers with respect to matters which pertain to the contract between it and the state or to the interests of the public. The rights involved are those of a minority stockholder, who, by becoming such, im-

pliedly agreed to the control of the affairs of the corporation by the majority. If such rights may be fully protected by the court by a remedy short of a "sentence of corporate death," there is, we think, no warrant, under the authorities, for the use of that drastic remedy.

Turning again to the facts, we are confronted at once by the admitted fact that the corporation is entirely solvent, and is continuing to exercise, only on a less extensive scale than formerly, the powers conferred upon it by its articles of incorporation. It has no debts, unless for current expenses. Its business has been, and continues to be, profitable. It has retired its preferred stock, and the 200 shares of common stock outstanding represent assets amounting to over $27,500. It has paid dividends upon its common stock during part of the time. The matters of which just complaint can be made relate to administrative acts of the officer in control of the affairs of the corporation, and to his diversion of a portion of the assets of the corporation to his own use, to the prejudice of the stockholders. Under these circumstances, and under the authorities cited, the corporation should not have been dissolved.

It does not follow that the appellee is entitled to no relief if, as a minority stockholder, it has been injured by the wrongful or unlawful act of the holder of the majority of the stock

**2. CORPORATIONS: corporate funds: restitution enforced.** or the officer in the control and management of the business of the corporation, in appropriating assets of the corporation to his own benefit and profit. *French v. Gifford,* supra; *Platner v. Kirby,* supra.

An unlawful diversion of the funds of the corporation is an injury to the corporation. Stockholders may maintain an action therefor, if the directors, on demand, refuse to do so; but such a suit is for the benefit of the corporation, and not in their individual right. *Dillon v. Lee,* 110 Iowa 156; *Kennedy v. Citizens' Nat. Bank,* 128 Iowa 561; *Troutman v. Council Bluffs S. F. & C. Co.,* supra. Where, however, the corporation is under the control of the party charged with the wrongful diversion, such a demand, since it would be unavailing, need not be made. Cook on Stock and Stockholders (3d Ed.), Section 741; 14 Corpus Juris 879. We think that the allegations in the amendment to the petition, that the appellant Fowler, in the management

and control of the corporation, had fraudulently paid to himself various sums from the assets of the corporation, and the prayer for an accounting from him and for general equitable relief, were sufficient, if the proof justified such action, to warrant the granting of the relief in that respect given in the decree.

While, as we have seen, the mere failure to hold meetings and elect officers does not result in a forfeiture of the corporate franchise, such failure is by appellee charged to the appellant Fowler as an incident of his alleged fraudulent diversion of the assets of the corporation to his own use. Without excusing the failure to permit the minority even an opportunity to participate, so far as a minority, from the nature of the case, may, in selecting those who should manage the corporation, there are extenuating circumstances for the fact of his continued assumption of control, though not for all his acts. He was, for several years after Manhard's death, the only individual stockholder. Since the election of Frank Fowler, Jr., as a director and officer, these two have been the only individual owners of stock, and their holdings have constituted a majority of the outstanding stock. In addition, the appellant Fowler has been at all times interested in, and we assume in control of, the Fowler Company, the holder of a portion of the stock, and a stockholder in, and during part of the time chairman of the board of directors of, the appellee bank, the only other stockholder. Under these circumstances, his power—and indeed his right, if he saw fit— to control the affairs of the corporation and the election of its directors cannot well be doubted.

In the enjoyment of this right, however, he was bound to exercise the utmost good faith, to act for and in the interest of the corporation, and not for his own benefit or profit. Officers and directors of a corporation occupy a fiduciary relation toward the stockholders in the transaction of the business and care of the property of the corporation. *Dawson v. National L. Ins. Co.,* 176 Iowa 362; *Wagner v. Standard Seed Tester Co.,* 194 Iowa 1330; *Price v. Holcomb,* supra. See, also, *Blair Town Lot & Land Co. v. Walker,* 50 Iowa 376; *Hallam v. Indianola Hotel Co.,* 56 Iowa 178; 14a Corpus Juris 117, 118. A contract be-

3. Corporations: officers: fiduciary relations.

tween a director and the corporation will be closely scrutinized in equity, and he must act in entire good faith. Especially must this be so when he is in sole charge of the business of the corporation, and the contract is for his benefit.

Applying these principles to the various transactions between the appellant Fowler and the corporation, we reach the conclusion that the action of the lower court in requiring him to account for the $1,000 paid him for his services in selling the storage building and retiring the preferred stock, and the $1,000 and $500 paid him out of the money received by the corporation for the property sold by it, was right.

As to the first of these transactions, it is to be said that, whether by force of circumstances or intentionally, he was a director and president of the corporation, and in sole charge of its business, and was drawing a salary for his services as president. The corporation was entitled to his services in doing whatever he, as such officer and director, assumed to do in the conduct of its business, without extra compensation.

All of the real estate in question lies in a block 600 feet square, bounded on all sides by streets, but with no platted alleys through it. The corporation at one time owned, roughly speaking, the south quarter and the north quarter of the block. The former it sold to the Artificial Ice & Fuel Company, the owner of ground adjoining it. Of the latter, it sold part to Brandes and Widdel, and still owns the rest. The appellant Fowler owns a part of the block adjoining the north quarter on the southwest. A complicated series of grants and reservations of easements resulted in one right of way across the block from northwest to southeast, and another extending northeast from the first easement to the street. These right of ways may be said to bound the north quarter of the block on two sides, and the south quarter and the tract owned by the appellant Fowler on one side, affording access from three streets to the rear or side of the tracts mentioned.

With respect to the $500 claimed to have been paid the appellant Fowler for an easement or right of way over his own property conveyed to Brandes and Widdel, it appears that the corporation and appellant Fowler contracted to sell the garage property and an easement over ground belonging to Fowler,

for $10,000. In the conveyance by the corporation, the grantor reserved for itself and Fowler the right to use a wall, and an easement over the property conveyed. The transaction, as testified to by Fowler, was that he received an 8-foot easement over the property so sold by the corporation, for a 6-foot easement over his property, which he conveyed to the purchaser. In addition to this, he retained for himself $500 out of the purchase price of the property sold. When the sale was made to the Artificial Ice & Fuel Company, there was conveyed an easement 16 feet wide over property belonging to him, covering the location of the easement previously conveyed to Brandes and Widdel, and 10 feet additional in width; and there was reserved to the corporation and to him an easement 12 feet wide over the property so sold by the corporation. At the same time, the Artificial Ice & Fuel Company conveyed to the corporation and to Fowler a right of way, which we understand was previously owned by it, over the property still owned by the appellant corporation. In this transaction it would appear that, while Fowler granted an additional 10 feet of right of way over his property, there was reserved for him a right of way 12 feet in width over the property conveyed by the corporation, and he also acquired an interest in still another easement over the property now owned by the corporation, and in addition retained $1,000 of the purchase price paid by the Artificial Ice & Fuel Company.

The result of these two transactions was that the appellant Fowler acquired, both over the ground sold and that retained by the corporation, rights similar in kind to, and, so far as the record discloses, not, we think, materially different in value from, those he granted, and in addition, $1,500 of the consideration paid by the purchasers. We are of the opinion that this cannot be sustained as consistent with the obligation he owed the corporation to act in the management and control of its property in its interest, rather than for his own advantage and profit, and that he was rightly required to account to the corporation for the amount so received.

We see no reason, however, for charging him with the $500 paid to a broker for services in making the sale of the storage house. We cannot approve of the loans made by Fowler to

**4. CORPORATIONS: powers: employment of broker.** himself and the Fowler Company, under the circumstances; but there is no claim that any loss to the corporation has resulted from these transactions, or that the notes given by the borrowers are not good.

Even in the absence of insolvency, and without a dissolution of the corporation, circumstances may arise which will justify the appointment of a temporary receiver. 14a Corpus Juris 951, 952. Without determining whether, independently of the dissolution of the corporation, the receiver was properly appointed, under the facts here found, we are clear that, when the appellant Fowler has paid to the receiver the amounts received by him, aggregating $2,500, with interest, as decreed by the district court, the property of the corporation should be returned to its then proper officers, and on the approval of his report, the receiver should be discharged.

The decree will be modified in accordance with this opinion, and otherwise affirmed. The costs in this court will be paid by the appellee and the appellant Fowler in equal parts.— *Modified and affirmed.*

FAVILLE, C. J., and STEVENS and DE GRAFF, JJ., concur.