BENNER-CORYELL LUMBER COMPANY, INC. *v.* INDIANA UNEMPLOYMENT COMPENSATION BOARD

[No. 27,429. Filed November 8, 1940. Rehearing denied December 17, 1940.]

22

*John R. Browne, John O. Campbell, Robert A. Gemmill* and *John R. Browne, Jr.,* all of Marion, for appellant.

*Samuel D. Jackson,* Attorney General; *Joseph P. McNamara,* Deputy Attorney General; and *Thomas M. Quinn, Jr.,* Chief Counsel, Unemployment Compensation

Division, and *Charles W. Grubb*, Attorney, Unemployment Compensation Division, both of Indianapolis, for appellee.

SHAKE, J.—This case calls into question the validity of § 2 (g) (4) of the Indiana Unemployment Compensation Law. Acts of 1939, ch. 121, § 1 amending § 2 (g) (4), § 52-1502 (g) (4), Burns' 1933 (Supp.), § 10168-2 (g) (4), Baldwin's Supp. 1939. Said section provides that the term "employer" in said act means:

> "Any employing unit which together with one (1) or more other employing units, is owned or controlled directly or indirectly by the same interests, or which owns or controls one or more other employing units, and which, if treated as a single unit with such other employing units or interests, or both, would be an employer under paragraph (1) of this subsection."

The language used is to be construed in connection with § 2 (g) (1) of said act, by which an employer is further defined as a unit having in its employ eight or more persons.

The appellant is an Indiana corporation, with its office and principal place of business in the town of LaFontaine, Wabash County. It is engaged in the retail lumber business and employs less than eight persons. Its capital stock is represented by 90 shares, 60 of which are owned by Bertha J. Coryell. Said Bertha J. Coryell also owns 185 out of 300 shares of the common stock of the Fairmount Lumber Company, a domestic corporation engaged in the lumber business at Fairmount, in Grant County, and which likewise employs less than eight persons. Together, said corporations employ more than eight persons. The minority stockholders of the respective corporations are not the same persons. The state assessed unemployment

compensation taxes against the appellant, which it paid under protest. It then brought this suit for a refund. The state answered, reciting the above facts; the appellant demurred to the answer; the trial court overruled the demurrer; the appellant refused to plead further; and judgment was rendered in favor of the state. The error relied on is presented by the ruling on said demurrer.

The appellant contends that the section of the Unemployment Compensation Law quoted above is unconstitutional when applied to the facts admitted by the pleadings. It asserts that the corporations concerned are separate and distinct legal entities, and that their classification for taxing purposes on the basis of the combined number of their employees violates § 1 of Article 10 of the Constitution of Indiana, which provides for a uniform and equal rate of assessment and taxation, and the provision of the Fourteenth Amendment to the Federal Constitution which guarantees to citizens (including corporations) equal protection of the laws. It is to be noted that no elements of fraud or intentional tax evasion are involved in this case, nor is there any showing of joint management of the two corporations or any other relationship between them beyond the fact that Bertha J. Coryell owns a controlling interest in the common stock of each. It is urged that to hold the statute valid as it is sought to be applied here, would unjustly penalize minority stockholders of corporations, who have no control over the transfer of stock not held by them, and are therefore powerless to prevent a majority of such stock from gravitating into the hands of one person who may at the same time own, or thereafter acquire, a controlling interest in another corporation, thereby subjecting,

indirectly, said minority holders to the burden of taxes not imposed upon corporations otherwise situated.

The taxes imposed by the Indiana Unemployment Compensation Law are excise and not property taxes. *Carmichael* v. *Southern Coal & Coke Co.* (1937), 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327; *Charles C. Steward Mach. Co.* v. *Davis* (1937), 301 U. S. 548, 57 S. Ct. 883, 81 L. Ed. 1279, 109 A. L. R. 1293. Section 1 of Article 10 of the Constitution of Indiana, which provides for a uniform and equal rate of assessment and taxation and forbids exempting property except for specific purposes, applies only to property taxes under a general levy. *Miles v. Dept. of Treasury* (1935), 209 Ind. 172, 199 N. E. 372, 101 A. L. R. 1359.

The question which we are called upon to answer is therefore reduced to this: Do the owners of a majority of the stock of a corporation have such control thereof as to make their ownership or control the basis of classification for the purpose of imposing excise taxes on such corporations in the manner prescribed by the act under consideration? That a corporation is a legal entity separate and distinct from its stockholders, individually or collectively considered, is not open to debate. It is equally well established that a majority of the stockholders have the right to manage and control the corporation, under certain limitations, and that those who acquire such stock are deemed to know that fact and to take it subject to that right. *Enterprise, etc., Pub. Co.* v. *Craig* (1924), 195 Ind. 302, 144 N. E. 542, 145 N. E. 309; *Barnes* v. *Brown* (1880), 80 N. Y. 527; *First Nat. Bank* v. *Fireproof S. B. Co.* (1925), 199 Iowa 1285, 202 N. W. 14.

Ownership of corporate stock is recognized as a proper basis of classification under some circumstances.

Thus it has been held that the federal government might require consolidated income tax returns of two brothers who owned 94.4 per cent of the stock of one corporation and 99.6 per cent of another. This was upon the theory that the corporations were affiliated within the meaning of a statute which provided that:

> " 'For the purpose of this section two or more domestic corporations shall be deemed to be affiliated . . . (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.' " *United States* v. *Whyel* (1927), 19 F. (2d) 260, 261.

This was a District Court case, thereafter affirmed on other grounds by the Circuit Court of Appeals. *United States* v. *Whyel* (1928), 28 F. (2d) 30. Certiorari was denied by the Supreme Court. *United States* v. *Whyel* (1929), 278 U. S. 664, 49 S. Ct. 178, 73 L. Ed. 570. So, also, statutes imposing license fees according to the number of establishments " 'under the same general management, supervision or ownership,' " have been sustained. *State Board of Tax Commissioners* v. *Jackson* (1931), 283 U. S. 527, 531, 51 S. Ct. 540, 75 L. Ed. 1248, 73 A. L. R. 1464, 75 A. L. R. 1536; *Fox* v. *Standard Oil Co.* (1935), 294 U. S. 87, 55 S. Ct. 333, 79 L. Ed. 780. None of the above cases considered the subject of discrimination against a corporation where the imposition of a tax was dependent upon the ownership of a mere controlling interest of its stock. The only case that we have found where the precise question here presented was before a court of last resort is *Independent Gasoline Co.* v. *Bureau of Com.* (1940), 190 Ga. 613, 614, 10 S. E. (2d) 58, 59. The Georgia statute provides:

> " 'Any employing unit, which together with one or more other employing units, is owned or con-

trolled (by legally enforceable means or otherwise) directly or indirectly by the same interests, . . . and which, if treated as a single unit with such other employing units, . . . would be an employer under paragraph (1) of this subsection.' "

The case is so nearly like the one we are called upon to decide, that we quote liberally from it. In the majority opinion, the court said:

"But it is contended that the legislature was authorized to place this defendant in a classification different from similar corporations and individuals, because of the fact that the owner of a majority of its stock owns a majority of the stock of another corporation, and that the two corporations are controlled by the same interests. This reasoning ignores the fact that this defendant is utterly powerless to determine who shall own its capital stock, or to fashion the business transactions and conduct of its stockholders. Since these are matters beyond the control of the corporation, they do not constitute a basis justifying the classification; and a classification must be reasonable and have a fair and substantial relation to the object of the legislation. *County of Walton* v. *County of Morgan,* 120 Ga. 548, 48 S. E. 243; *Stewart* v. *Anderson,* 140 Ga. 31, 78 S. E. 457; *F. S. Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415, 40 Sup. Ct. 560, 64 L. Ed. 989. It is contended, however, that the classification is justified as a means for enforcing the law and preventing its evasion. No doubt exists as to the right of the legislature to enact any legal provision that will prevent evasion and aid in the enforcement of a legal enactment. *Purity Extract & Tonic Co.* v. *Lynch,* 226 U. S. 192, 33 Sup. Ct. 44, 57 L. Ed. 184. But this rule should never sustain an act that places a burden upon innocent and helpless minority stockholders solely because of the status of the majority stockholder who might seek to evade his legitimate obligations under the statute. Such provision to the extent of the pro rata share of the tax borne by the minority stockholder enables the majority stockholder to

escape his obligations. If it is sought to prevent evasion the fair and reasonable course would be to impose the entire tax burden upon the interest owning or controlling the different units. Since this procedure would provide a complete means of enforcement and of preventing evasion, and since it would keep the burden of tax payment upon the actor whose conduct it is sought to control, the method prescribed under section 19 (g) (4) is unreasonable, unfair, and can not be sustained."

Mr. Justice Grice concurred specially, and the Chief Justice joined in the views expressed by him. These observations are likewise pertinent, and, in a large measure, applicable to the case at bar:

"I am agreeing to the opinion, but there is an additional reason why it seems to me the judgment is correct, and that is that the statute referred to did not contemplate a situation such as is shown by this record. Here we have not only two distinct corporations, but one of them is in one county, one in another. One's line of business is entirely different from the other's. The work required of an employee of the one is not of the same character as that of the other. The two are not one business. It is not a case where the same employees work sometimes for one company, and at other times for the other company. It is not an instance where two or more corporations are engaged in doing things which in their nature are related, nor where for convenience different elements of the same business are operated under different charters; nor is this a case of subterfuge. The two businesses are wholly unrelated. It was not intended that the law should be applied to a state of facts such as that here shown."

As has already been observed, the law regards a corporation as a distinct entity. This status is unaffected by the fact that a majority of its stock may or may not be controlled by the same interests. It may also be assumed for the present inquiry, that excise taxes of the character defined by the Unem-

ployment Compensation Law may be imposed upon corporations; that corporations may be classified for that purpose; and that the amount of such taxes to be exacted may be determined by payroll expenditures. It is likewise true that as artificial persons, corporations must enjoy liberty of action to determine for themselves whether they will engage or continue in enterprises that would render them subject to this tax, and they should be in a position to know or ascertain whether such liability exists. Over the sale and transfer of its stock, a corporation ordinarily has no control. Transactions relating to the sale of capital issues may be negotiated privately or through independent marketing agencies, and the responsible officers of a corporation may not be advised as to the ownership of its shares until the certificates therefor are presented for transfer. The stock of a particular corporation may be so distributed that the controlling majority thereof may change ownership at frequent intervals. In practical operation, situations may arise where the majority of the voting stock may or may not be in the hands of the same interests many times between annual meetings of the stockholders, or even between the tax paying periods. Under such circumstances, uncertainty and confusion would be inevitable and a continuity of policy impossible. For these reasons, it seems impossible to justify the interpretation sought by the state, upon the theory that the holders of a majority of the stock have control thereof because it is within their power to dictate who the directors shall be.

The feature of the law which apparently undertakes to impose liability for these taxes on a corporation employing less than eight persons because the owner of a majority of its stock has a like interest in another corporation similarly situated, is like-

wise indefensible. As was pointed out in the concurring opinion of the Georgia case, from which we have quoted, this construction would permit corporations remotely located and engaged in businesses as dissimilar as those for which corporations may be formed, to be arbitrarily and fictitiously considered together for the purpose of imposing this tax. We do not believe that the General Assembly intended the provision of the act to be so applied, and if it did, we would be obliged to hold it void. Legislatures have a wide latitude in setting up classifications in taxing statutes, but such classifications must always be reasonable and bear a rational relationship to the subject-matters with which they deal. *Board, etc.* v. *Johnson* (1909), 173 Ind. 76, 89 N. E. 590.

It should be kept in mind that the term "employing unit," as used in the statute, is broad enough to include individuals and co-partnerships, as well as corporations. In some instances, it may also embrace trustees, personal representatives of estates, and receivers. For an example as to how the act may operate under the state's theory, a corporation with only three employees may be rendered liable for the tax because 51 per cent of its voting stock is owned by a person who also owns a private business with six employees, or two such businesses with three employees each. Thus the corporation, in the case of the illustration, is forced into the situation of a taxpayer, without regard to its competitive relationship to other corporations engaged in the same business and having the same number of employees. Its legal entity, which the law is supposed to respect, is thereby grievously discriminated against. The clause, "controlled directly or indirectly by the same interests," must therefore be carefully scrutinized and considered to ascertain its

true meaning and significance. There is authority for the proposition that the holders of a majority of the voting stock of a corporation have control thereof; but to control may also have a restricted meaning, depending upon the circumstances under which the language is employed. Thus, in *City of Chicago* v. *Dorband* (1938), 297 Ill. App. 617, 18 N. E. (2d) 107, the word "control," as used in an ordinance, was construed as being synonymous with "ownership." Regardless of the shades of meaning that may be attributed to the word, we are convinced that in the interpretation of the act before us, control of a corporation must be regarded as something more than that remote control that arises out of the fact that a majority of the holders of its voting stock may dictate who its directors shall be.

Since no issue of fraud, deceit, or tax evasion was tendered in this case, we are of the opinion that the construction and application of the statute sought by the state would do violence to the appellant's constitutional rights. We therefore hold that appellant's demurrer to appellee's second paragraph of amended answer ought to have been sustained.

Reversed, with directions so to do.

NOTE.—Reported in 29 N. E. (2d) 776.