Joseph J. SMITH and Steve J. Smith, Appellees,

v.

Joseph J. BITTER, Appellant,

and

Gomer's, Inc., Defendant.

No. 63837.

Supreme Court of Iowa.

May 19, 1982.

Rehearing Denied July 15, 1982.

Joseph J. Bitter, Dubuque, appearing pro se.

William C. Fuerste of Fuerste, Carew, Coyle, Juergens & Sudmeier, Dubuque, for appellees.

LeGRAND, Justice.

This litigation culminates what started as a business venture among friends and, although financially successful, terminated in acrimony and mutual distrust. Defendant Bitter appeals from adverse rulings on plaintiffs' petition and his own cross-petition, both asking for declaratory judgments, as well as from denial of his counterclaim for damages. We affirm in part and reverse in part.

In 1975 Bitter, a Dubuque lawyer, acted as attorney in several matters for two brothers, Joseph J. Smith and Steve J. Smith. They became fast friends, and a warm social relationship developed between the Smiths and Bitter. Within a short time, the three began discussing the possibility of going into the tavern business in an area convenient to Dubuque's "college community", consisting of Loras and Clarke colleges and the University of Dubuque.

The parties bought real estate housing an existing tavern, took title in the name of Gomer's, Inc., a corporation which Bitter formed for the Smiths and himself, and entered into extensive remodeling of the building. Bitter was to furnish legal services and loan expertise in getting the business started. The Smiths were to be primarily responsible for remodeling. The tavern was to be operated under the name of "Gomer's Bar," capitalizing on the nickname "Gomer" which had identified Steve J. Smith when he attended Loras College.

Early in the game differences arose. The Smiths became convinced that Bitter was not carrying his share of the load. He, in turn, was fearful the Smiths were trying to freeze him out. There is evidence to support both of these views. Over Bitter's vigorous protests, the Smiths assumed virtual control of the remodeling and of plans for opening the tavern.

Originally Bitter brought suit against the Smiths, and the Smiths countered by filing a petition for declaratory judgment. Later Bitter's original action was dismissed pursuant to Iowa R.Civ.P. 215.1 for lack of prosecution. Bitter raised the same issues, however, in his cross-petition for declaratory relief. He also filed a counterclaim asking both actual and punitive damages.

Smiths' petition for declaratory judgment asked a determination of rights under the agreement of the parties and a declaration of each party's interest in Gomer's, Inc. Bitter's cross-petition for declaratory relief asked the court to determine the existence

of a partnership and to confirm that he held a one-third interest therein. He also asked for an accounting, the appointment of a receiver, and a finding that Gomer's, Inc. is not a "viable corporation."

In addition Bitter filed a counterclaim for $100,000 actual and $250,000 punitive damages, alleging willful and malicious breach of fiduciary duties by both Smiths, causing him emotional distress and "other harm and damage."

The trial court dismissed Bitter's counterclaim. The court also found the parties had formed a corporation under the name of Gomer's, Inc., in which Joseph J. Smith, Steve J. Smith, and Joseph J. Bitter each owned a one-third interest. We refer to other findings of the court later.

At the outset we recognize this as a most difficult case in which to achieve a totally satisfactory result. The parties are the victims of their own folly, and they now look to the courts to redeem them from the resulting chaos and confusion. The trial court apparently attempted to do this, and in some respects accomplished a better practical solution than ours will be. Nevertheless we must decide the case on the issues presented and the evidence produced.

Both sides have warned—or threatened—that this is only the beginning skirmish of the litigation which will surely follow. Their differences are already seven years old. If they persist, perhaps they can yet turn this highly successful business into a losing one. They seem dedicated to this course. At the risk of rushing in where we should not go, we cannot forego the temptation to say that if ever a case cried out for settlement, this is it. Be that as it may, we must decide what is here, and we must do so under established rules of law according to the evidence disclosed by the record. We now take up that onerous and thankless task.

First, we address briefly a matter which pervades this case. It concerns the questionable professional judgment of Bitter in representing clients with whom he has a conflict of interest. The trial court attributed part of the present turmoil to this

conflict, and we believe this is incontrovertible.

The Canons of Professional Responsibility, DR 5–104(A), state in part as follows:
DR 5–104 Limiting Business Relations with a Client.
(A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.

■ If not apparent from the very start, it soon became clear that the Smiths and Bitter were embroiled in irreconcilable differences. Whether Bitter violated this canon is not a proper matter for review now. We point out, however, as did the trial court, the dangers which face a lawyer who is both business associate and lawyer for those he must "independently" represent. For a discussion of the harsh and demanding responsibilities of an attorney under those circumstances, see *Committee on Professional Ethics and Conduct of the Iowa State Bar Association v. Mershon*, 316 N.W.2d 895, 898–900 (Iowa 1982). Even a violation of professional ethics, however, would not subject Bitter to the penalty of forfeiting an otherwise valid business interest, a result which the Smiths seem to urge upon us.

This appeal presents the following issues for our consideration:

1. Error in holding the business operated by the Smiths and Bitter is a corporation, not a partnership.

2. Error in finding the real estate in question is owned by Gomer's, Inc.

3. Error in refusing to appoint a receiver.

4. Error in fixing a salary for Steve J. Smith as manager of the business.

5. Error in denying Bitter's counterclaim for damages.

## I. *Partnership v. Corporation*

Although there are several other substantial issues, the overriding question in this

case concerns the form of the business intended by the parties—corporate or partnership. The resolution of this dispute is made difficult by the vacillating testimony of the principals throughout this ongoing battle. Neither side comes away with much credibility; both shifted positions from time to time as best suited their immediate purpose.

Dealing with Bitter's ambivalence first, we note he organized a corporation under the name of Gomer's, Inc., took title to the real estate in that name, gave a title opinion to obtain a $50,000 mortgage certifying the corporation as the fee simple owner, and advised the Smiths the corporate form should be used to avoid personal liability. Now Bitter disavows the corporation, says it was never "viable," and insists the three principals always intended the tavern to be operated as a partnership venture.

Bitter, however, isn't the only one to change course. In an apparent effort to obtain control of the business, the Smiths, too, abandoned the position they earlier espoused. Originally the Smiths represented themselves to be partners, filed tax returns as a partnership, took out a beer license in their individual names, and did not object when Bitter made representations of which they were aware to several lending institutions that the business was a partnership. Now they brush all this aside and insist the business was a corporate venture.

The prize of all this, of course, is control over the business, a vital concern now that Bitter is an unwelcome associate. Clearly Bitter, as a one-third partner, would be in a much stronger position to protect his interest than if he owns one-third of the stock in Gomer's, Inc.

The trial court found Joseph J. Smith, Steve J. Smith, and Joseph J. Bitter each owned a one-third interest in the business and all its assets. There is no appeal from this ruling. The question thus becomes this: *What* did each own a one-third interest in—a partnership or a corporation?

In attempting to determine the intended form of ownership, the trial court faced the same impasse that confronts us. The court attempted to reconcile the differences and conflicting testimony by holding the business operated as a partnership until November 1, 1977, and as a corporation after that date. We must reject this solution, appealing as it is on practical grounds. If there was a partnership until November 1, 1977, then there was a partnership after that date as well. Nothing happened on November 1, 1977, to convert the business from one form to another.

We have purposely ignored until now the circumstance which is determinative of this dilemma. It lies in the pleadings. In two separate instruments—the plaintiffs' reply to defendant's answer to their petition and the plaintiffs' answer to Bitter's counterclaim—the Smiths admitted the existence of a partnership.

In the first of these, Bitter amended his answer to plaintiffs' petition for declaratory judgment to allege the parties entered into an oral partnership agreement "for the purpose of owning and developing a tavern in the City of Dubuque, Iowa." The Smiths filed a reply admitting this allegation.

A similar concession was made in plaintiffs' amended answer to Bitter's cross-petition for declaratory judgment. There the Smiths admitted that if "plaintiffs and Joseph J. Bitter would make equal financial or other contributions to the *partnership*, each of said parties would hold a one-third interest in said tavern." (Emphasis supplied.)

The rule is well settled that admissions in the pleadings, if not amended or withdrawn, stand as conclusive proof of the admitted facts. The party making them is bound thereby. No evidence is needed to establish them. *Long v. McAllister,* 319 N.W.2d 256, 258 (Iowa 1982); *Hanson v. Lassek,* 261 Iowa 707, 709–10, 154 N.W.2d 871, 972–73 (1967).

These admissions in the pleadings establish that the parties intended the business to be operated as a partnership. This holding is limited to the tavern business only and does not extend to ownership of

the real estate, which is discussed in Division II.

We reverse that part of the judgment holding the business to be a corporation after November 1, 1977.

## II. *Title to Real Estate*

The real estate housing Gomer's Bar was purchased from Herbert Althaus and Le-Von A. Althaus, husband and wife, in the name of Gomer's, Inc. Bitter and the Smiths were all active in the negotiations for the purchase of the property. All three signed an offer to purchase as "corporation officers," although at that time a corporation had not yet been formed. Bitter claims, and it is not disputed, that the designation "corporation officers" was added by the real estate broker after the offer to purchase was signed. Under the record before us, we do not deem that to be material.

Later a contract for the purchase of the property was signed by Steve J. Smith as president and Joseph J. Bitter as secretary of Gomer's, Inc., which had by then been issued a certificate of incorporation by the State. Within a short time, other financing was arranged through the Dubuque Bank & Trust Company. The sellers were paid off, and they then conveyed the property by warranty deed to Gomer's, Inc. Gomer's, Inc. executed a note and mortgage encumbering the property to Dubuque Bank & Trust Company in the amount of $50,000. In connection with this loan, Bitter furnished the lender with a title opinion certifying Gomer's, Inc. as the holder of fee simple title.

Now Bitter contends the corporation does *not* have title because the original offer to purchase worked an equitable conversion in favor of the Smiths and him as individuals. He premises this on the fact the corporation was not in existence when the offer was signed.

In negotiating for the purchase of the real estate, Bitter and the Smiths were promoters acting for the corporation they were then in the process of organizing. A promoter is one who undertakes to bring about the incorporation, procures for it the rights and capital by which it is to carry out its purposes, and establishes it as able to do business. *The Telegraph v. Loetscher*, 127 Iowa 383, 386, 101 N.W. 773, 774 (1904). 18 Am.Jur.2d Corporations, § 106, at 647 (1965); see also *King Features Syndicate Dept. of Hearst Corporation International News Service Division v. Courrier*, 241 Iowa 870, 874, 43 N.W.2d 718, 722 (1950). A promoter stands in a fiduciary position toward both the corporation and its stockholders and is prohibited from acquiring a secret personal advantage from any action taken on behalf of the corporation. *Hinkley v. Sac Oil & Pipe Line Co.*, 132 Iowa 396, 462–63, 107 N.W. 629, 632 (1906); *The Telegraph v. Loetscher*, 127 Iowa at 385–86, 101 N.W. at 774; 18 Am.Jur.2d *Corporations*, § 109 at 650–51.

In the present case the Smiths and Bitter owed a fiduciary duty to the corporation for which they were acting and to its stockholders. The fact that the promoters themselves were the stockholders does not alter that obligation. Bitter had an additional obligation as attorney for the corporation. The record is clear that all negotiations for purchase of the real estate were made on behalf of Gomer's, Inc., which the Smiths and Bitter were then organizing. Bitter cannot profit personally from this transaction nor can he assert personal ownership of the real estate against those toward whom he was bound to exercise the utmost good faith. There is no merit to Bitter's argument.

## III. *Bitter's Counterclaim for Damages*

Bitter filed a counterclaim asking actual damages of $100,000 and punitive damages of $250,000. The gravamen of his claim is that the Smiths were guilty of willful and malicious misconduct purposely designed to "inflict emotional distress on [Bitter] and to cause him other harm and damage."

Bitter details a long list of alleged misconduct by the Smiths. He says that they "set up new and secret bank accounts, organized a new and secret or purported to

organize a new and secret corporation, withdrew funds from the business for their own personal profit, made loans to themselves from the business property, mortgaged and pledged the assets of the business for the obtaining of personal funds, refused to allow the defendant to inspect, see, or examine the books and records of the business, applied for a liquor license in their own name, and in the name of a new or purported corporation, and otherwise attempted to force the defendant from the business by refusing to communicate with him, and by slanderous statements and threats made against him."

The trial court found against Bitter on this issue. These findings are binding on us if supported by substantial evidence. Iowa R.App.Pr. 14(f)(1). Bitter complains that the trial court did not make any findings of fact to support the result reached. We do not agree.

The trial court found neither the Smiths nor Bitter were without fault. Most of the onus was placed directly on Bitter for his neglect, inattention, and dereliction of duty in handling the legal affairs of the business. The trial court further found the action of the Smiths in taking over the business and in ignoring Bitter in making business decisions, maintaining business records, incurring expense, and making distribution of corporate funds was in direct response to Bitter's failure to take timely and effective action to carry out his duties and obligations to the business. The trial court specifically found the Smiths were not guilty of willful or malicious conduct toward Bitter.

To put the matter mildly, the evidence was in sharp dispute. Certainly there was substantial evidence to support Bitter. There was also substantial evidence to support the Smiths. On this state of the record, the trial court found against Bitter, and we are bound by these findings.

### IV. *Appointment of a Receiver*

Bitter asserts it was error for the trial court to reject his application for appointment of a receiver. The trial court found a receiver was not necessary to conserve or protect the assets of the business. The trial court further found that the Smiths had established an escrow account in which they segregated one-third of the income pending the outcome of this litigation; that Bitter had access to the books and records; and that the business was well and efficiently operated with careful management and control of the cash flow.

■ Ordinarily a receiver is appointed to liquidate an insolvent business; but circumstances may dictate the appointment of a receiver in the absence of insolvency or dissolution. *First National Bank of Waterloo v. Fireproof Storage Building Co.*, 199 Iowa 1285, 1298, 202 N.W. 14, 20 (1925). In the present case the trial court refused to appoint a receiver for a business operating successfully at a substantial profit. The appointment of a receiver is within the sound discretion of the trial court. *Holden v. Construction Machinery Co.*, 202 N.W.2d 348, 360 (Iowa 1973). We find no cause to say the trial court abused its discretion in denying Bitter's application.

### V. *Steve J. Smith's Salary*

■ In rendering judgment, the trial court fixed the salary of Steve J. Smith at $37,500 per year for his services in managing Gomer's Bar. Bitter objects to this as being beyond the scope of the pleadings and not supported by the evidence. We agree with his complaint. We find nothing in either the pleadings or evidence to justify the trial court setting *any* salary for Smith.

Declaratory judgment actions are subject to the same rules of pleading and proof as other actions. *See Hanson v. Lassek*, 261 Iowa 707, 711, 154 N.W.2d 871, 873 (1967) (relief must be based on issues as framed by the pleadings and supported by the evidence); 22 Am.Jur.2d Declaratory Judgments § 99, at 867–68 (1965). We point out this case was tried before the adoption of present Iowa R.Civ.Pr. 69, the notice pleading rule.

This conclusion does not mean Steve Smith is not entitled to reasonable compen-

sation for his services in managing Gomer's Bar. We hold only that this was not an issue in the present case.

VI. *Summary*

██ Bitter asked for an accounting. We hold he is entitled to one. Much of the evidence which is essential for accounting purposes is already in the record, but there will undoubtedly be additional evidence produced by the parties. We remand the case for this purpose.

The judgment of the trial court is affirmed, reversed, and modified as follows:

1. The judgment is modified to provide that Gomer's, Inc. is a corporation organized and operating for the purpose of holding title to real estate described in the petition for declaratory judgment but not operate the business of Gomer's Bar.

2. The judgment is modified to provide that Joseph J. Smith, Steve J. Smith and Joseph J. Bitter are equal one-third partners in the business owned and operated as Gomer's Bar in the city of Dubuque, Iowa.

3. The judgment is modified to provide that Bitter is entitled to an accounting of the operation of Gomer's Bar from Joseph J. Smith and Steve J. Smith from the date of its inception.

4. The judgment denying Joseph J. Bitter's counterclaim is affirmed but this does not preclude his right to contest the propriety of the conduct of the business in an accounting or other litigation between the parties.

5. The judgment awarding salary to Steve J. Smith as manager of Gomer's Bar is reversed, but this does not preclude Steve J. Smith from establishing his right to salary in a reasonable amount in an accounting between the parties.

6. The judgment refusing to appoint a receiver is affirmed.

7. The costs of this action shall be assessed one-half against Joseph J. Smith and Steve J. Smith and one-half against Joseph J. Bitter.

AFFIRMED IN PART, REVERSED IN PART, MODIFIED AND REMANDED.