RYTKONEN *v.* BUTLER.

1. APPEAL AND ERROR—DISSOLUTION OF CORPORATION—DE NOVO RE-
VIEW.
On appeal from decree dissolving corporation, appointing re-
ceiver, ordering sale of leasehold interests and partition of real
estate, and avoiding an assignment of a lease, Supreme Court
considers case *de novo.*

2. CORPORATIONS—DISSOLUTION—RECEIVERS—INSOLVENCY.
Ordinarily insolvency alone will not justify dissolution of a
corporation and the appointment of a receiver for its assets.

3. SAME—DISSOLUTION.
Decree dissolving an insolvent corporation is not disturbed in
view of defendant shareholders' expressed desire for dissolu-
tion and liquidation.

4. SAME—DISSOLUTION—RECEIVERS—COURT SUPERVISION.
Under statute permitting dissolution proceedings of a corpora-
tion either out of court or subject to its supervision, dissolu-
tion is ordered to be subject to court supervision and receiver
appointed where there has been dissension and conflict among
the stockholders and such circumstances would not be con-
ducive to an advantageous liquidation of assets of an in-
solvent corporation by its officers and directors (Act No. 327,
§ 65, Pub. Acts 1931).

5. SAME—INTERFERENCE WITH BUSINESS—COURTS.
Generally, in the absence of fraud, breach of trust or abuse of
discretionary powers, courts will not, on the application of
minority stockholders, interfere with the management of the
business and affairs of a corporation.

6. SAME—ASSIGNMENT OF LEASE—MANIPULATION OF ASSETS—LIS
PENDENS.
Assignment of a lease of a theater property which was one of the
principal assets of an amusement company, whereby provision
of original lease permitting the stockholders to share in the

profits of the company was eliminated was properly found to have constituted a manipulation voiding the assignment which was executed the day after filing of minority stockholders' bill to dissolve corporation and notice *lis pendens.*

7. SAME—TENDER OF RENT—FINDING OF COURT.
   Court's finding that a certain sum was due plaintiff minority stockholders, who also owned an undivided interest in realty leased to corporation, as rent as of a given date but that defendant majority stockholders who held remaining undivided interest had been paid was proper where sum received as down payment for assignment of lease was used to pay back rent, defendants had been paid and plaintiffs' refusal to accept tender was then justified.

Appeal from Marquette; Bell (Frank A.), J. Submitted April 9, 1943. (Docket No. 32, Calendar No. 42,266.) Decided June 7, 1943.

Bill by Jafet J. Rytkonen and others against Jennie L. Butler and others for partition of real estate, dissolution of a corporation and the appointment of a receiver. Supplemental answer by Martin Thomas to permit avoidance of forfeiture of lease by paying rent found to be due. Decree for plaintiffs. Defendants appeal. Affirmed.

*M. J. Kennedy,* for plaintiffs.

*Edward J. Dundon (Raymond Turner,* of counsel), for defendants and supplemental defendant.

STARR, J. On December 20, 1915, James Russell, Frank J. Russell, John G. Stenglein, and Edward J. Butler owned in fee, as tenants in common, a certain parcel of land in the city of Ishpeming (herein referred to as parcel one) described as follows:

"Lot 74 and the east 36–23/100 feet of lot 75 in the Cleveland Iron Mining Company's first addition

to the city of Ishpeming, Michigan, together with the buildings and structures thereon, the same being commonly known as the Ishpeming Opera House property.''

They also held and owned a 50-year lease dated September 23, 1914, covering a certain other parcel of land in the city of Ishpeming (herein referred to as parcel two) described as follows:

''Lot 85 and the south five feet of lot 84 of the original plat of the city of Ishpeming, Michigan, together with the buildings and structures thereon, the same being commonly known as the Butler Theater property.''

On that date, December 20, 1915, they conveyed by warranty deed an undivided 1/5 interest in parcel one and also assigned an undivided 1/5 interest in the 50-year lease on parcel two to Eldred G. Robbins and Nelson J. Robbins. On that date the six above-named persons entered into a written agreement to organize a corporation to be known as the Ishpeming Amusement Company, for the purpose of leasing and operating the theaters located on the two above-described parcels. On the same date the corporation was organized and articles of association signed. The articles provided for an authorized capital stock of $15,000 divided into 150 shares of the par value of $100 each. The above-named persons subscribed for the entire issue in the following proportions:

| ''James Russell | 30 shares |
| Frank J. Russell | 30 shares |
| John G. Stenglein | 30 shares |
| Edward J. Butler | 30 shares |
| Nelson J. Robbins | 15 shares |
| Eldred G. Robbins | 15 shares'' |

In pursuance of the agreement and as provided in the articles, the subscribers paid for such capital stock by executing and delivering to the company a lease dated December 20, 1915, covering parcels one and two for the term of 30 years from and after January 1, 1916. Such lease provided for an annual net rental of $4,800, payable in monthly instalments of $400 each. The company, as lessee, agreed to pay all taxes and assessments and to keep the buildings in good repair and insured against loss or damage by fire. The lease further provided that the company should pay the rent directly to the owners of the properties "according to their respective interests therein, namely, Frank J. Russell, one-fifth; James Russell, one-fifth; John G. Stenglein, one-fifth; Edward J. Butler, one-fifth; Nelson J. Robbins, one-tenth, and Eldred G. Robbins, one-tenth." The record indicates that such persons later acquired the fee title to parcel two on which they had previously held the 50-year lease.

Until amended in January, 1938, the bylaws of the company provided that "dividends shall be paid monthly  *  *  *  out of the earnings." The 1938 amendment provided for the payment of dividends semiannually. The written agreement of December 20, 1915, between the six above-named persons stated that each of them "shall be and remain a director of said corporation unless he shall voluntarily resign." The agreement further provided, in substance, that each of the officers of the company, elected at the time of its organization, "shall hold said office unless he shall voluntarily resign or shall be removed therefrom by a vote of stockholders and directors owning five-sixths of the capital stock of said company."

It is apparent that the company was organized by the property owners to facilitate their holding and operation of the two theater properties and the monthly distribution between them of the rental proceeds and the profits, if any. The company operated the two theaters from January 1, 1916, until the present suit was begun in August, 1941. In defendant company's answer it was alleged, in substance, that during this period of about 25 years the corporation paid the property owners more than $100,000 in rent and also paid its stockholders a considerable amount in dividends. There was testimony indicating that the two theater properties were worth from $90,000 to $100,000.

Edward Butler acquired the 1/5 interest of James Russell and the 1/5 interest of Frank Russell in both parcels and also their shares of stock in the company. He also acquired ½ of the 1/5 interest of John Stenglein in both parcels and ½ of his stock. These acquisitions gave Butler a 7/10 interest in both properties and 105 shares, *i.e.*, 7/10, of the capital stock of the company. He was manager of the company and its theaters until his death in November, 1937, at which time his interest in the two parcels and his stock in the company passed to his widow, Jennie Butler. A 1/10 interest in the real estate and 15 shares of capital stock were transferred to defendant Elizabeth McNulty, the sister of defendant Jennie Butler. Later the widow, Jennie Butler, transferred a 1/10 interest in the real estate and 15 shares of stock to Lawrence and Lucille Butler, jointly. She also transferred one share of stock, but no interest in the real estate, to her daughter, defendant Bernadette Reinhardt.

In December, 1937, for a consideration of about $30,000, Nelson Robbins, Eldred Robbins, and John

Stenglein transferred their aggregate 3/10 interest in both parcels to plaintiff Jafet Rytkonen and assigned to him their claims against the company for accumulated and unpaid rental.  For such consideration they also transferred their aggregate 45 shares of stock to plaintiffs Jafet Rytkonen and Paul Bennett.   Jafet Rytkonen immediately transferred 15 shares to his son, plaintiff William Rytkonen.   At this point in the chain of events the two parcels of real estate and the stock of the company were held and owned by the following persons, respectively:

|  | Shares of Stock | Interest in Real Estate |
|---|---|---|
| Jennie Butler, defendant | 74 | 5/10 |
| Bernadette Reinhardt, defendant | 1 | none |
| Lawrence and Lucille Butler, defendants | 15 | 1/10 |
| Elizabeth McNulty, defendant | 15 | 1/10 |
| Jafet Rytkonen, plaintiff | 15 | 3/10 |
| William Rytkonen, plaintiff | 15 | |
| Paul Bennett, plaintiff | 15 | |
|  | 150 | |

(Jafet Rytkonen had entered into contracts to sell a 1/10 interest in both parcels of real estate to his son, William Rytkonen, and a 1/10 interest to Paul Bennett.)

On December 30, 1937, Jafet Rytkonen, Paul Bennett, Bernadette Reinhardt, Jennie Butler, Elizabeth McNulty, and Lawrence Butler were elected directors of the company.  On that date Jennie Butler was elected president; Elizabeth McNulty, treas-

urer; Paul Bennett, secretary; and Bernadette Reinhardt was made manager of the company. The record indicates that dissension and trouble arose soon after the Rytkonens and Bennett entered the business. They criticized the manner in which the business and financial affairs of the company were conducted, much of which criticism appears to have been justified. During succeeding years the financial condition of the company did not improve, and the dissension continued between the Rytkonen and the Butler interests. During this time there were unsuccessful negotiations between such interests relative to the sale or purchase of their respective holdings. It appears that finally, in August, 1941, the business relations between the conflicting interests reached a breaking point. At that time the company owed considerable indebtedness which it was unable to pay, a substantial part of which was owing to the property owners as accumulated and unpaid rent under the 30-year lease. Its principal assets were the lease, which would expire January 1, 1946, and $500 of stock in the Ishpeming Hotel Company.

An adjourned annual meeting of the directors was scheduled to be held August 15, 1941. The secretary, Paul Bennett, declined to call such meeting and informed defendant Reinhardt that the Rytkonen interests were beginning suit against the company. The meeting was called by the president, Jennie Butler. Jafet Rytkonen and Paul Bennett did not attend, and the meeting was adjourned to August 19th. In the meantime, on August 18th, plaintiffs filed their bill of complaint in the present suit and also notice *lis pendens*.

The adjourned directors' meeting was held on August 19th, and those directors representing the Butler interests, being a majority of the board, were

present. Rytkonen and Bennett did not attend. During the course of such meeting a summons in the present suit was served on certain of the directors as defendants. At such meeting a resolution was adopted authorizing the sale and assignment of the company's 30-year lease to defendant Martin D. Thomas for a consideration of $10,400, and the president, Jennie Butler, was authorized to execute such assignment. A further resolution was adopted which provided that the proceeds from the assignment to Thomas should "be used first to pay the lessors  *  *  *  their respective shares due them for rent." Such assignment to Thomas was authorized and consented to in writing by Jennie Butler, Bernadette Reinhardt, Lawrence Butler, and Lucille Butler, who owned the aggregate of 90 shares, *i.e.*, 60 per cent., of the corporate stock. On the following day, August 20, 1941, the company, by its president, executed assignment of the lease to Thomas. The assignment provided for a down payment of $7,000 and the balance of $3,400 to be paid in monthly instalments of $200 each beginning August 1, 1944; also that Thomas should pay the lessors the rental of $4,800 per year as specified in the lease, regardless of whether or not he operated the theaters. Thomas took over the theater properties and continued to operate them until the receiver, subsequently appointed by the court in the present suit, took possession in December, 1941. A substantial part of Thomas' down payment of $7,000 was immediately paid out by the company to apply upon unpaid monthly instalments of rent and in payment of the company's promissory notes which had been indorsed by Edward J. Butler in his lifetime.

In their bill of complaint plaintiffs alleged that the corporation was "hopelessly insolvent;" that it was in default in the payment of rent and was

losing money. They charged many acts of misman-
agement on the part of the Butler interests, which
were in control. They also alleged that the continu-
ation of the company's business under the manage-
ment of the Butler interests would result in fur-
ther losses and in the depletion and wasting of its
assets, and that such continuation would be detri-
mental to its creditors and stockholders. Plain-
tiffs asked that the company be dissolved; that a
receiver be appointed; and that the assets, including
the 30-year lease, be sold and the proceeds applied
in payment of its indebtedness. They also asked
that the two parcels of real estate be partitioned by
selling the same and dividing the proceeds between
the owners according to their respective interests.

Defendants answered, generally denying the al-
legations of mismanagement but admitting, in ef-
fect, that the corporation should be dissolved and
its assets liquidated, and that they had no objec-
tion to the partition of the two parcels of real es-
tate. In their answers they stated in part:

"That they (defendants) have no desire for or
against a partition of said parcels of land and build-
ings. * * *
"That these defendants also desire a dissolution
of said corporation but insist that such dissolution
can be conducted with much less expense and more
satisfactorily to the creditors of said corporation
outside of court than through a receiver appointed
by the court."

In their answer all the defendants having an in-
terest in the real estate prayed:

"That no receiver be appointed for the Ishpeming
Amusement Company (defendant) inasmuch as
these defendants contemplate dissolving said cor-
poration and working out a settlement with the

creditors of said corporation in a manner more beneficial to such creditors than by dissolution in court."

In their answers defendants set forth the purported assignment and transfer of the 30-year lease to defendant Thomas, to which plaintiffs replied, alleging in effect that such assignment was made without authority and was void. On his petition defendant Thomas was granted leave to file a supplemental answer. In such answer he alleged his purchase of the lease and asked that he be protected against forfeiture thereof by reason of the company's delinquency in the payment of rent prior to the assignment. No creditor of the corporation has intervened in the present suit. In his opinion the trial judge said in part:

"This assignment (to defendant Thomas) was not only an assignment of the lease, but it was also an agreement under which Mr. Thomas was to pay the rent and taxes and other expenses, but it eliminated the right of the stockholders of the company to participate in the profits which was provided for in the original lease. * * *

"In looking over the evidence in this case I am forced to the conclusion that this was a manipulation which voids the assignment. Why? Because the lease which was assigned was the only valuable asset of the amusement company and that asset was sold to Mr. Thomas without any arrangement being made for the protection of creditors and made at a private sale, there being no evidence that there was any effort made to ascertain whether it was a fair value, and I think it is questionable whether the consideration was a fair consideration under the testimony on both sides of this case.

"It appears by the testimony of Mr. Rytkonen (plaintiff) that in these times those two theatres. could be operated at a net profit of $10,000 per year,

and by the testimony of Mrs. Reinhardt (defendant), that in these times those theatres could be operated at a profit, and if Mr. Rytkonen is anywhere near right, then a lease which can earn $10,000 a year is sold too cheaply, if it is sold for $10,000. That is not all of it. The agreement which is part of the assignment changed the terms of the lease and deprived the owners of the real estate of the right to share in the profits of the operation lease, an operating fund which was very small, and I add that the intention must be determined by acts, and it appears that after Mr. Thomas paid $7,000 to the amusement company over $4,000 of it was paid to the treasurer for the stockholders and distributed to the stockholders except to Mr. Rytkonen who refused to accept it, and also a greater part of the balance was paid upon notes which favored certain stockholders of the concern, which was alleged to be bankrupt, these notes being notes which had been indorsed by the deceased, Edward J. Butler, and while I find no evidence on the subject, I think the court may well assume that the Butler interests felt either a legal or a moral obligation to take care of these notes. For these reasons I think the assignment must be set aside. * * *

"The testimony in its most favorable light shows that the amusement company is insolvent, * * * so I think for the benefit of creditors as well as for the purpose of cleaning up this whole situation, that a receiver should be appointed who would gather the assets and ascertain the liabilities and report to this court; that the lease should be sold to the highest bidder at a public sale and the assets of the Ishpeming Amusement Company wound up.

"Now all parties seem to agree that the real estate should be partitioned. They also all agree that it cannot be partitioned physically, so it must be sold to the highest bidder and, as matters now exist, it must be sold subject to this lease after that is transferred to its highest bidder, and in order that a bid-

der, either a party to this suit or a stranger, may protect themselves, the real estate on the partition and the lease under the receivership should be sold at the same time. I am rather inclined to the view that under the pleadings here the real estate should be taken right into the receivership and all the property handled as one in the winding up of the affairs, the proceeds of the sale to be brought into court so that the court may, if necessary, in the final analysis, protect the creditors of the Ishpeming Amusement Company and the accruing tax claims.''

A decree was entered December 19, 1941, determining the corporation to be insolvent and dissolving it, and appointing a receiver with the usual powers and authority, who was authorized to continue the operation of the theaters and account to the court. It ordered the 30-year lease sold at public auction. It also ordered the two parcels of real estate sold at public auction subject to the lease, and the proceeds partitioned between the owners. The decree determined the assignment of the 30-year lease from the company to defendant Thomas to be void and set such assignment aside. The trial court reserved decision on other questions, including claims of the owners for past-due rent. Defendants appeal from such decree. This being a chancery case, we consider the same *de novo*.

It appears that since the entry of the decree the receiver has continued the operation of the theater properties and reported to the court; also that certain claims of creditors filed have been heard and allowed and other claims totaling more than $20,000 reserved for further consideration.

In their answer those defendants having an interest in the two parcels of real estate consented to the sale thereof and partition of the proceeds between the owners. The decreed sale of the real es-

tate and partition of the proceeds is not questioned on this appeal.

Defendants contend that the trial court was without authority to dissolve the company. We recognize the rule established in this State that insolvency alone will not ordinarily justify dissolution and the appointment of a receiver. *Town* v. *Duplex-Power Co.,* 172 Mich. 519; *Fuller* v. *McCormick,* 156 Mich. 518. See, also, 16 (1942 Rev.) Fletcher, Cyclopedia Corporations (Perm. Ed.), pp. 146, 151, §§ 7718, 7720. However, in the present case the defendant company states in its answer that it "also desire(s) a dissolution * * * but insist(s) that such dissolution can be conducted with much less expense and more satisfactorily to the creditors of said corporation outside of court than through a receiver." Other defendants state in their answer that they "contemplate dissolving said corporation and working out a settlement with the creditors." In view of the defendants' expressed desire for dissolution and liquidation, we are not disposed to interfere with the decree of the trial court dissolving the company.

The only objection of defendants to the appointment of a receiver appears to be their above-quoted contention that liquidation could be "conducted with less expense" outside of court. The dissension and conflict between the Butler and Rytkonen interests would not be conducive to an advantageous liquidation of the company's assets by its officers and directors. Under the facts and circumstances disclosed by the record we believe the liquidation should be by a receiver appointed by the trial court. Act No. 327, § 65, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 10135-65, Stat. Ann. § 21.65), provides, in substance, that a corporation may be wound up or dissolved either voluntarily or involuntarily; that

if the proceedings are voluntary, they may be conducted either out of court or subject to the supervision of the court and, if involuntary, the proceedings "must be subject to the supervision of the court." We conclude that the appointment of a receiver by the trial court was entirely proper.

Defendants contend that the corporation's assignment of its 30-year lease to defendant Thomas was a valid assignment, and that the court improperly declared it void. This assignment, which was executed August 20, 1941, was authorized on August 19th by a majority of the directors and also by the written consent of the holders of a majority of the shares of stock. However, such authorization and execution of the assignment were subsequent to the beginning of the present suit and filing of notice *lis pendens* on August 18th. Act No. 327, § 57, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 10135-57 [Stat. Ann. § 21.57]), provides, in substance, that a corporation may sell all or substantially all of its property and assets upon such terms and for such consideration as its board of directors shall deem expedient, "when and as authorized by the affirmative vote   *   *   *   or written consent of the holders of a majority of the shares issued."

The trial court determined such assignment to be void on the ground that it was "a manipulation" by the Butler interest. The court's reasons for such determination were set forth in his opinion hereinbefore quoted. We recognize the general rule that in the absence of fraud, breach of trust or abuse of discretionary powers, courts will not ordinarily, on the application of minority stockholders, interfere with the management of the business and affairs of a corporation. *Barrows* v. *J. N. Fauver Co.,* 280 Mich. 553; 16 (1942 Rev.) Fletcher, Cyclopedia Corporations (Perm. Ed.), p. 810, § 8082. However, we

are convinced that under all the circumstances surrounding the assignment to Thomas, the trial court was justified in declaring such assignment void. See *Voigt* v. *Remick,* 260 Mich. 198. In view of such conclusion, defendants' contention that Thomas should be protected against forfeiture of the 30-year lease by reason of the nonpayment of rentals prior to his assignment becomes immaterial.

The decree determined that the rental due from the company to defendants and their predecessors in interest was paid in full to September 30, 1941. It also determined that the company on that date owed plaintiffs rental in the amount of $1,220.76. Defendants object to such determination on the ground that defendant Elizabeth McNulty, acting as trustee for the property owners, had tendered check for such amount to plaintiffs who had declined to accept the same. It appears that a substantial part of the Thomas down payment of $7,000 for an assignment of the lease was turned over to defendant McNulty for distribution to the property owners in payment of their accumulated rental claims against the company. Her check to plaintiffs for the sum of $1,220.76 was a part of the down payment received from Thomas. Plaintiffs were apparently justified in refusing to accept such payment from McNulty, as their acceptance might have been considered a confirmation of the assignment to Thomas. In any event, the trial court properly determined that the corporation was indebted to plaintiffs for such accumulated rent. The question as to whether such money in the hands of McNulty belongs to the receiver of the company or to plaintiffs can be determined by the trial court.

The court reserved decision as to the claim of defendant Thomas for the $7,000 he paid down on the assignment price of the lease, and also reserved

decision as to other claims and matters involved in the receivership proceedings.

From our study of the record we are convinced that the decree justly and equitably determined the rights of the parties. Such decree is affirmed and the case remanded for further proceedings. Plaintiffs shall recover costs.

BOYLES, C. J., and CHANDLER, NORTH, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J. concurred in the result.