HERMAN v. DERESZEWSKI.

1. APPEAL AND ERROR—CHANCERY CASE—DE NOVO REVIEW.
   A suit to cancel a voting-trust agreement entered into by stockholders of a corporation and for an accounting, being a chancery case, is reviewed *de novo* on appeal to the Supreme Court.

2. SAME—VOTING TRUST—FRAUD—RECORD.
   Finding of trial court that there was no fraud in inducing certain stockholders to enter into voting trust *held*, sustained by record.

3. CORPORATIONS—VOTING TRUST—STATUTES.
   Where there was substantial compliance with statute in the execution of an agreement and issuance of stock to voting trustees and alleged fraud does not appear to have been shown, the ensuing voting trust is valid (Act No. 327, § 34, Pub. Acts 1931, as amended by Act No. 34, Pub. Acts 1934 [1st Ex. Sess.]).

4. SAME—VOTING TRUST—CANCELLATION—DISSENSION—FINDING OF TRIAL COURT.
   Where the owners of a majority of the capital stock of a corporation apparently executed a voting-trust agreement in good faith and for the accomplishment of a lawful purpose and fraud or misconduct by the voting trustees, directors, or officers is not proved, cancellation of the voting trust would not be justified by the mere dissension, dissatisfaction, and lack of harmony over questions of policy and management nor by a finding by the trial court that termination of voting trust would be for the best interests of stockholders (Act No. 327, § 34, Pub. Acts 1931, as amended by Act No. .34, Pub. Acts 1934 [1st Ex. Sess.]).

5. SAME—VOTING TRUSTS—RESIGNATION OF TRUSTEE.
   The resignation of one of three designated persons to act as voting trustees did not operate as a dissolution of the voting trust since statute vests the right to vote in the majority of such trustees and the remaining trustees, being a majority, could continue to vote (Act No. 327, § 34, Pub. Acts 1931, as amended by Act No. 34, Pub. Acts 1934 [1st Ex. Sess.]).

Appeal from Wayne; Callender (Sherman D.), J. Submitted June 12, 1945. (Docket No. 16, Calendar No. 42,844.) Decided October 8, 1945.

Bill by Stanley Herman and others against Adam Dereszewski to have voting trust declared illegal, to restrain an election of board of directors, and for an injunction. Seven defendants join as plaintiffs. Decree cancelling voting trust. Defendants appeal. Plaintiffs cross-appeal. Reversed and bill dismissed.

*William M. Schwartz* (*Meyer Weisenfeld,* of counsel), for plaintiffs.

*Elmer H. Groefsema* and *Milton A. Behrendt,* for defendants.

Starr, C. J. The defendant, Daily Creamery Company, is a Michigan corporation with its principal place of business in the city of Hamtramck. In October, 1939, the holders of 203 shares, being a majority in par value amount of the capital stock of the company, executed a voting-trust agreement, whereby they constituted three designated persons as voting trustees of their stock for the period of 10 years. The agreement provided in part:

"We do hereby make such deposit (of shares of stock) with said trustees for the sole purpose of vesting in them the right to vote thereon, for and in our behalf, and in our place and stead, at any time hereafter from the date of the execution of this agreement and to continue to October 2, 1949; it being expressly understood that the manner of such voting shall be in the sole and absolute discretion of said trustees.

"This agreement shall be irrevocable for the aforementioned period. * * *

"Further, this agreement is executed in compliance with the corporation code of the State of Michigán, * * * section 34, † * * * and this agreement is intended to be governed thereby."

The stockholders who executed the agreement assigned their stock certificates to the voting trustees, and in April, 1940, a certificate for 203 shares of stock was issued in the names of the trustees. Directors were elected at a stockholders' meeting in December, 1939. The directors elected officers and employed one Ulatowski as manager, who has continued in that capacity. No stockholders' meetings were held after 1940, although it appears that directors' meetings were held from time to time.

Trouble arose regarding the management of the business, and in September, 1941, 28 stockholders filed bill of complaint against the company and the 12 stockholders who had signed the voting-trust agreement. Subsequently, 7 of the individual defendants withdrew, and an order was entered permitting them to join as parties plaintiff in an amended bill of complaint. In their bill and amended and supplemental bills plaintiffs alleged that the voting-trust agreement was invalid; that the voting trustees and officers and directors had mismanaged the business; that the agreement had resulted in dissension and trouble among stockholders; and that defendants were conspiring to wreck the company. They asked, among other things, for an accounting; that the voting-trust agreement be declared void; and that a receiver be appointed. Defendants answered, denying the material allegations of the bill and amendments and plaintiffs' right to the relief sought. Testimony was taken, and a decree was entered canceling the voting-trust agreement on the ground that its cancellation was

† Act No. 327, § 34, Pub. Acts 1931, as last amended by Act No. 34, Pub. Acts 1934 (1st Ex. Sess.) (Comp. Laws Supp. 1940, § 10135–34, Stat. Ann. § 21.34).

for "the best interests of all the stockholders." The decree also dismissed the bill as to the company and denied the appointment of a receiver.

Defendants appeal, contending that the court erred in canceling the agreement. Plaintiffs cross-appeal, claiming that the court erred in not finding that the resignation of one of the voting trustees operated as a dissolution of the voting trust. There was no appeal from the dismissal of the bill as to the creamery company or from the refusal to appoint a receiver. This being a chancery case, we review *de novo*. In his opinion the trial court said in part:

"Upon the pleadings and proofs in this case, a situation is not presented which calls for the appointment of a * * * receiver. This corporation is not insolvent. * * *

"The proofs offered and received do not establish that the voting trust is null and void. On the other hand, they do establish that the voting trust is, and was at the time it was entered into and executed, a valid instrument under the law of this State. * * *

"The plaintiffs, in their bill of complaint, allege fraud and conspiracy. The proofs do not sustain the allegations of fraud and conspiracy as alleged. * * *

"While I think it may be fairly said that there was a majority who desired that the voting trust be continued for its duration of ten years, there were three, possibly, or four, who indicated that they thought the voting trust should be terminated. * * *

"They (plaintiffs) haven't made out any case establishing that there was anything invalid or fraudulent in the conduct of the trustees under the voting trust agreement, nor of the board of directors. * * *

"The court is of the belief, from the proofs in this case, that a termination of this voting trust agreement is in the best interests of all the stockholders and of this defendant corporation itself."

The record is principally composed of conflicting and confusing testimony relative to the effect of the voting-trust agreement. Some stockholders, including Walenty Niedbala, who had resigned as a voting trustee during the pendency of the suit, testified that the agreement had resulted in dissension and trouble and in the mismanagement of the business. Other stockholders testified that the agreement had resulted in more harmony and in better management. After reading the record we agree with the trial court, who said: "This is just a quarrel over the matter of power and authority." In any event, the record indicates that at the time of the trial, the company was doing a substantial business and was not insolvent.

Plaintiffs alleged fraud and misrepresentation on the part of the individual defendants in inducing certain stockholders to execute the voting-trust agreement. The trial court held there was no proof of fraud, and the record sustains that finding.

It reasonably appears that the voting-trust agreement was promoted by certain stockholders in an effort to avoid trouble and dissension over the control and management of the company. There was substantial compliance with the statute in the execution of the agreement and the issuance of stock to the voting trustees. We agree with the trial court that the agreement was valid. See authorities cited, 105 A. L. R. 102-148; Wilgus & Hamilton, Michigan General Corporation Act, pp. 260-272; 5 Fletcher, Cyclopedia Corporations (Perm. Ed.), pp. 264-334, §§ 2075-2095.

The owners of a majority of the capital stock apparently executed the agreement in good faith and for the accomplishment of a lawful purpose. Mere dissension, dissatisfaction, and lack of harmony over questions of policy and management do not

justify its cancellation. We find no evidence of fraud or misconduct by the voting trustees or directors or officers that would justify the cancellation of the agreement. The trial court's finding that the termination of the voting trust was for the best interests of stockholders does not alone justify cancellation. The case of *Rytkonen* v. *Butler,* 305 Mich. 580, cited by plaintiffs and cross appellants, has no bearing on the questions before us, because in that case all parties agreed that the corporation should be dissolved, and the only question was whether the dissolution should be by the corporation or by a receiver.

The resignation of one of the voting trustees did not operate as a dissolution of the voting trust, because the above-cited statute provides that "the right to vote said shares and the manner of voting the same  *  *  *  shall be determined by a majority of said trustees." The remaining trustees, being a majority, could continue to vote the stock held by them.

We find no evidence justifying cancellation of the voting-trust agreement. The decree of the trial court canceling the agreement is set aside, and a decree may be entered in this court dismissing plaintiffs' bill and amended and supplemental bills. Defendants may recover costs of both courts.

NORTH, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred. The late Justice WIEST took no part in the decision of this case.